SECOND DIVISION

No. 1-07-1642

| | | |
|---|---|---|
| JOSEPH P. MURPHY and PATRICIA MURPHY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| MANCARI'S CHRYSLER PLYMOUTH, INC., a | ) | No.  06 L 9445 |
| Corporation, | ) | |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | |
| (DaimlerChrysler Corporation, | ) | Honorable |
| | ) | Jeffrey Lawrence, |
| Defendant). | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiffs Joseph and Patricia Murphy bought a Chrysler Sebring automobile from defendant Mancari's Chrysler Plymouth, Inc. (Mancari's).  In 2005, Joseph sustained permanent spinal cord injuries when the Sebring rolled over while he was driving it.  In 2006, plaintiffs filed a personal injury action asserting strict product liability claims against Mancari's and DaimlerChrsyler Corporation, the manufacturer of the vehicle.[1] Mancari's moved to dismiss the strict liability count against it pursuant to section 2-621

---

[1] Plaintiffs also filed a negligence count against Mancari's, but it is not at issue in this appeal.  The strict liability count against DaimlerChrysler Corporation is also not at issue here.

1-07-1642

of the Illinois Code of Civil Procedure (735 ILCS 5/2-621 (West 2006)),[2] asserting it was

not the manufacturer of the vehicle. The court granted the motion to dismiss. It also

granted plaintiffs' request for leave to file an interlocutory appeal pursuant to Supreme

Court Rule 308 (155 Ill. 2d R. 308) and certified the following question for our review:

"To state a claim for strict liability in tort against a defendant other than a

manufacturer who has filed an affidavit complying with 735 ILCS 5/2-621(a),

must a plaintiff relying upon the 'actual knowledge of the defect' exception

contained in 735 ILCS 5/2-621(c)(2) allege only that said defendant had actual

knowledge of the physical characteristics of the product that plaintiff claims were

unreasonably dangerous, or, in the alternative, must plaintiff allege actual

knowledge of the physical characteristics of the product and actual knowledge

that said characteristics made the product unreasonably dangerous?"

(Emphasis in original.)

We allowed plaintiffs' petition for interlocutory appeal. In answer to the court's question,

for the reasons that follow, we find that a plaintiff relying upon the "actual knowledge of

the defect" exception contained in section 2-621(c)(2) (735 ILCS 5/2-621(c)(2) (West

2006)) to avoid dismissal of its strict liability claim against a nonmanufacturer defendant

must allege that the nonmanufacturer defendant had actual knowledge of the physical

---

[2] Public Act 89-7 amended section 2-621 (735 ILCS 5/2-621) effective March 9, 1995. However, in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 689 N.E.2d 1057 (1997), our supreme court, held the act unconstitutional in its entirety. Accordingly, the version of section 2-621 that was in effect before the 1995 amendment is applicable to this case.

2

characteristics of the product that the plaintiff claims were unreasonably dangerous and that said characteristics made the product unreasonably dangerous. We remand to the circuit court for further proceedings in light of this determination.

Pursuant to section 2-621, also known as the "seller's exception," a nonmanufacturer defendant in a strict product liability action may be dismissed from the action if it certifies the correct identity of the manufacturer of the product which allegedly caused the injury. 735 ILCS 5/2-621 (West 2006); *Saieva v. Budget Rent-A-Car of Rockford*, 227 Ill. App. 3d 519, 525, 591 N.E.2d 507, 511 (1992). Once the plaintiff has sued the product manufacturer and the manufacturer has answered or otherwise pleaded, the court must dismiss the strict liability claim against the certifying defendant(s). 735 ILCS 5/2-621(b) (West 2006); *Kellerman v. Crowe*, 119 Ill. 2d 111, 113-14, 518 N.E.2d 116, 117 (1987). When a defendant complies with the requirements of section 2-621, its dismissal from a strict liability action is mandatory. *Lamkin v. Towner*, 138 Ill. 2d 510, 532, 563 N.E.2d 449, 459 (1990). A plaintiff may move at any time for reinstatement of a previously dismissed defendant if an action against the product manufacturer would be impossible or unavailing. 735 ILCS 5/2-621(b) (West 2006); *Kellerman*, 119 Ill. 2d at 114, 518 N.E.2d at 118.

Section 2-621(c) provides three exceptions to the mandatory dismissal of a complying defendant. 735 ILCS 5/2-621(c) (west 2006). A plaintiff can forestall dismissal of a defendant if it shows one of the following:

"(1) That the defendant has exercised some significant control over the

design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or

(2) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or

(3) That the defendant created the defect in the product which caused the injury, death or damage." 735 ILCS 5/2-621(c) (West 2006).

The certified question concerns the exception stated in section 2-621(c)(2), pursuant to which a court may not dismiss a defendant otherwise eligible for dismissal from the suit if the plaintiff shows that the defendant "had actual knowledge of the defect in the product which caused the injury, death or damage." 735 ILCS 5/2-621(c)(2) (West 2006).

Plaintiffs' complaint alleged that the design of the Sebring proximately caused Joseph's injuries and the benefits of the design did not outweigh the risk of danger inherent in the design. In salient part, plaintiffs alleged the Sebring was in an unreasonably dangerous condition when it left Mancari's control because: (a) the windshield and roof of the convertible vehicle were designed with inadequate strength and failed to dissipate the energy of a foreseeable rollover in a safe manner and (b) the Sebring was not equipped with a sufficient roll bar or other devices to protect Joseph from traumatic injury in a reasonably foreseeable rollover. They alleged Mancari's knew before the occurrence that the Sebring was not equipped with a sufficient roll bar or

4

other devices to protect Joseph but did not warn plaintiffs.

Mancari's moved to dismiss pursuant to section 2-621(b) because DaimlerChrysler manufactured the Sebring. It attached an affidavit by Mancari's general manager identifying DaimlerChrysler as the manufacturer. The affidavit also asserted Mancari's did not at any time regulate or direct DaimlerChrysler in its design, testing or inspection of the Sebring; did not exercise any control over design or manufacturing of the Sebring; did not then or now have any actual knowledge of the alleged defects referenced in the complaint; and did not create any of the alleged defects.

Plaintiffs responded by asserting Mancari's should not be dismissed because the exception stated in section 2-621(c)(2), for a defendant who had "actual knowledge of the defect," applied. 735 ILCS 5/2-621(c)(2) (West 2006). They asserted they had adequately pled the exception by their assertion that "[b]efore the occurrence, Mancari's knew, but did not warn plaintiffs that the vehicle was not equipped with a sufficient toll bar or other devices to protect Joseph from traumatic injuries in a reasonably foreseeable manner." Plaintiffs attached the deposition of Mancari's general manager to show Mancari's had actual knowledge of the defects of which plaintiffs complained. Plaintiffs did not allege that Mancari's knew that the windshield and roof and/or lack of roll bar created an unreasonably dangerous condition. Instead, they argued it was their burden to show Mancari's had actual knowledge of the conditions plaintiffs claimed made the Sebring defective and not that Mancari's believed those conditions were in

5

1-07-1642

fact defective or unreasonably dangerous.

Mancari's responded that the section 2-621(c)(2) exception did not apply because having "actual knowledge of a defect" presupposes that a defect existed and the defendant knew of the alleged defect and the deposition showed Mancari's had no actual knowledge that the windshield design or lack of roll bar were defects as plaintiffs claimed. The court granted Mancari's motion to dismiss, but asks us to decide whether a plaintiff asserting the section 2-621(c)(2) exception to avert dismissal of a nonmanufacturer defendant must "allege only that said defendant had actual knowledge of the physical characteristics of the product that plaintiff claims were unreasonably dangerous, or, in the alternative, must plaintiff allege actual knowledge of the physical characteristics of the product and actual knowledge that said characteristics made the product unreasonably dangerous?" (Emphasis in original.)

In a product liability action based on strict liability, the inability of a defendant to know of or prevent the risk is not a defense because fault is not an issue. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 156, 879 N.E.2d 893, 899 (2007). Under common law, all entities in the distributive chain of an allegedly defective product, including manufacturers, sellers, wholesalers, distributors and lessors of the product, are strictly liable in product liability actions for injuries resulting from that product. *Kellerman v. Crowe*, 119 Ill. 2d 111, 113, 518 N.E.2d 116, 117 (1987); *Root v. JH Industries, Inc.*, 277 Ill. App. 3d 502, 506, 660 N.E.2d 195, 197 (1995). Strict liability is imposed upon any party " 'who sells any product in a defective condition unreasonably

6

dangerous to the user or consumer or to his property.' " *Lamkin v. Towner*, 138 Ill. 2d 510, 528, 563 N.E.2d 449, 457 (1990), quoting Restatement (Second) of Torts §402A (1965). This liability is predicated on a finding that the product is unreasonably dangerous, regardless of fault. *Miller v. Dvornik*, 149 Ill. App. 3d 883, 889, 501 N.E.2d 160, 164 (1986). A seller who puts a defective product, *i.e.*, an unreasonably dangerous product, into the stream of commerce runs the risk of being held strictly liable for injuries caused by the product, regardless of whether the seller actually knew of the defect, contributed to the defect or failed to discover the defect. *Sims v. Teepak, Inc.*, 143 Ill. App. 3d 865, 867, 493 N.E.2d 721, 723-24 (1986). The focus in a strict product liability action is on the product, on the determination of whether a product is unreasonably dangerous, on the question of "whether the product in its present state, without installation of optional safety devices, is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function." *Miller*, 149 Ill. App. 3d at 888, 501 N.E.2d at 163-64.

In contrast, the focus in section 2-621(c) is on the nonmanufacturer members of the distributive chain that put the product into the stream of commerce, on their actions with regard to and knowledge of the defect (735 ILCS 5/2-621(c)(2), (c)(3) (west 2006)) or alleged defect (735 ILCS 5/2-621(c)(1) (West 2006)), not on the product. Section 2-621 provides a means whereby a nonmanufacturer defendant can extricate itself from a product liability litigation, common law strict liability notwithstanding, unless the plaintiff can show that the defendant "exercised some significant control over the design or

manufacture of the product or had actual knowledge of, or created, the defect." *Logan v. West Coast Cycle Supply Co.*, 197 Ill. App. 3d 185, 191, 553 N.E.2d 1139, 1143 (1990).

Section 2-621(c) introduces elements usually at issue in negligence actions. The focus in a product liability action based on negligence is on the conduct of the defendant and not, as in strict liability, on the product. *Blue v. Environmental Engineering, Inc.*, 215 Ill. 2d 78, 95, 828 N.E.2d 1128, 1141 (2005). In a negligence action, fault is an issue, because the inability of a defendant to know of or prevent the risk could preclude a negligence finding. *Townsend*, 227 Ill. 2d at 156, 879 N.E.2d at 899. An important aspect of strict liability is that proof of negligence is unnecessary. *Heyen v. Sanborn Manufacturing Co.*, 223 Ill. App. 3d 307, 315, 584 N.E.2d 841, 846 (1991). Because the section 2-621(c) exceptions to dismissal of a certifying nonmanufacturer defendant focus on whether the defendant did anything wrong, section 2-621(c) is in derogation of the common law of strict liability in which fault has no place.

"[S]tatutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation." *Barthel v. Illinois Central Gulf R.R. Co.*, 74 Ill. 2d 213, 220, 384 N.E.2d 323, 327 (1978). But "courts will read nothing into such statutes by intendment or implication" (*Barthel*, 74 Ill. 2d at 220, 384 N.E.2d at 327), and we will not extend such statutes "any further than what the language of the statute absolutely requires by its express terms or by clear implication" (*In re. W.W.*, 97

Ill. 2d 53, 57, 454 N.E.2d 207 (1983)). "[I]n order to effect the least - rather than the most - change in the common law," courts limit statutes in derogation of the common law to their express language. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 69, 809 N.E.2d 1248, 1272 (2004). Statutes must be construed to ascertain and give effect to the legislature's intent. *Moore v. Green*, 219 Ill. 2d 470, 479, 848 N.E.2d 1015, 1020-21 (2006).

Statutory language, the best evidence of legislative intent, must be afforded its plain, ordinary, popularly understood meaning, and, unless such language is ambiguous, a statute must be applied as written without resorting to other aids of construction. *Moore*, 219 Ill. 2d at 479, 848 N.E.2d at 1020-21; *People v. Fort*, 373 Ill. App. 3d 882, 885, 869 N.E.2d 950, 953 (2007). Here, the issue centers on the legislature's use of the word "defect" in section 2-621(c)(2)'s provision that if a defendant is shown to have "had actual knowledge of the defect in the product which caused the injury, death or damage," the court may not dismiss that defendant. 735 ILCS 5/2-621(c)(2) (west 2006). We must determine whether the legislature intended "defect" to mean just the physical characteristics/design of the product or whether it intended "defect" to mean the unreasonably dangerous physical characteristics/design of the product. When determining the plain and ordinary meaning of words, a court may look to the dictionary if, as here, a word or phrase is undefined in the statute. *Fort*, 373 Ill. App. 3d at 885, 869 N.E.2d at 953.

The word "defect" is defined as "[w]ant or absence of something necessary for

9

completeness or perfection; deficiency"; an "[i]mperfection, whether material or immaterial; a blemish; a fault" and is synonymous with "inadequacy." Webster's Second New International Dictionary 686 (1954). Use of "defect" necessarily implies that something is inadequate, imperfect. Nothing in section 2-621 suggests that we should not give the word its ordinary definition. In other words, to avert dismissal of a defendant otherwise eligible for dismissal, the plaintiff must show the defendant had actual knowledge of the imperfection/blemish/fault/deficiency in the product which caused the injury. In a strict liability action, a "defect" is a product in an unreasonably dangerous condition. Accordingly, the obvious interpretation of section 2-621(c)(2) requires a plaintiff to show that a presumptively dismissed defendant had actual knowledge of the unreasonably dangerous nature of the physical characteristics/design of the product, not just actual knowledge that the physical characteristics/design existed, in order to avoid dismissal of that defendant.

The purpose of section 2-621 is to allow a defendant whose sole liability results from its role as a member in the chain of distribution of an allegedly defective product, who has not been shown to have created or contributed to the alleged defect or had knowledge of the defect, to get out of a product liability action at an early stage in order to avoid expensive litigation and to defer liability upstream to the manufacturer, the ultimate wrongdoer. *Kellerman*, 119 Ill. 2d at 113, 518 N.E.2d at 117; *Cherry v. Siemans Medical Systems, Inc.*, 206 Ill. App. 3d 1055, 1060-61, 565 N.E.2d 215, 218 (1990). When it enacted section 2-621, the legislature was presumptively aware of the

strict product liability doctrine and its underlying public policy in favor of disregarding fault in assessing liability. See generally *Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 630, 634, 872 N.E.2d 551, 554 (2007). Yet, by providing an exemption from strict liability for a nonmanufacturer defendant who has done nothing wrong with regard to putting an allegedly defective product into the stream of commerce, it introduced the fault element into a strict liability analysis.

Nevertheless, extending section 2-621 no further than what its language absolutely requires by its express terms and clear implication, the legislature's introduction of the fault element into a strict liability action, through use of the term "defect" among other things, does not show an intention to eliminate strict liability for nonmanufacturer defendants. Rather, it limits the application of common law strict liability to those defendants who may actually be at fault for injuries sustained by a defective/unreasonable dangerous product and should, therefore, be the ones to pay for those injuries: (1) manufacturers and (2) nonmanufacturer defendants who may have actively contributed in some way to the injury, whether through control, failure to warn, disregard of known dangers or wilful and wanton misconduct. If a plaintiff cannot show that a nonmanufacturer defendant did anything wrong with regard to putting the allegedly dangerous product into the stream of commerce, section 2-621 provides the means whereby that defendant can avoid the litigation expense of defending a strict liability action in which, if it was not at fault in any way, it would ultimately have its damage award indemnified by the actual wrongdoer, the manufacturer, anyway.

11

We remand to the circuit court for further proceedings in light of our answer to the certified question.

Certified question answered; remanded.

HOFFMAN, P.J., and HALL, J., concur.

1-07-1642

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

JOSEPH P. MURPHY and PATRICIA MURPHY,

        Plaintiffs-Appellants,

v.

MANCARI'S CHRYSLER PLYMOUTH, INC., a Corporation,

        Defendant-Appellee

(DaimlerChrysler Corporation, Defendant).

No. 1-07-1642

Appellate Court of Illinois
First District, Second Division

March 31, 2008

JUSTICE KARNEZIS delivered the opinion of the court.

HOFFMAN, P.J., and HALL, J., concur.

Appeal from the Circuit Court of Cook County.

The Honorable Jeffrey Lawrence, Judge Presiding.

For APPELLANT: Pfaff & Gill, Ltd., of Chicago (Bruce R. Pfaff, of counsel)

For APPELLEE: Swanson, Martin & Bell, LLP, of Chicago (Brian W. Bell, Mario M. Iveljic and Catherine Basque Weiler, of counsel)