FIFTH DIVISION
August 27, 2010

1-08-3474

| | | |
|---|---|---|
| ESTHER BROBBEY, a Minor, By Her Father and Next Friend, John Brobbey, ANNA BROBBEY, a Minor, By Her Father and Next Friend, John Brobbey, ENOCH BROBBEY, By His Father and Next Friend, John Brobbey, GBOYEGA ADERELE, a Minor, By Her Father and Next Friend, Adedotun Aderele, ADEDOYIN ADERELE, a Minor, By Her Father and Next Friend, Adedotun Aderele, GLADYS SHABANGY, KODZOVI NIPASSA, JOHN BROBBEY, ADEDOTUN ADERELE, and KEJI ADERELE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) | Appeal from the Circuit Court of Cook County, |
| v. | ) ) ) | 05 L 004282 |
| ENTERPRISE LEASING COMPANY OF CHICAGO, | ) ) ) | The Honorable James D. Egan, Judge Presiding. |
| Defendant-Appellee, | ) ) | |
| General Motors Corporation, and its Chevrolet Division, City Chevrolet, Buick and Geo, Inc., | ) ) ) | |
| Defendants. | ) | |

PRESIDING JUSTICE TOOMIN delivered the opinion of the court:

In this appeal, we determine whether a defendant, in response to claim of spoliation, may disclaim the duty to preserve evidence by simply providing notice to plaintiffs of its availability for inspection prior to disposal. Plaintiffs initially brought the action below premised upon claims of strict liability and negligence for injuries sustained in the operation of a van they rented from defendant, Enterprise Leasing Company of Chicago. The accident allegedly was caused by

the van's failure to operate in a normal manner due to a manufacturing defect. Plaintiffs later added a spoliation of evidence claim based on the destruction of the van by Enterprise. The circuit court granted summary judgment in favor of Enterprise on the strict liability and negligence claims and dismissed the spoliation claims. For the following reasons, we affirm in part, reverse in part, and remand.

BACKGROUND

On April 18, 2003, John Brobbey rented a 2003 Chevrolet Astro van from Enterprise Leasing (Enterprise) for a church retreat to Minnesota. The van was manufactured by General Motors Corporation (GM) and was sold to Enterprise by City Chevrolet, Buick & Geo, Inc. (City Chevrolet).[1]

At the time Brobbey rented the van, in moving the vehicle on Enterprise's premises, he noticed that the van wobbled and jerked whenever he applied the brakes. He immediately spoke with the Enterprise rental agent and expressed his concerns. However, after the agent assured Brobbey that there was nothing wrong with the vehicle, Brobbey drove the van from Enterprise to his home. En route, he experienced the same problems and the van wobbled and jerked whenever he applied the brakes. Because the Enterprise agent had assured him the van was fine, he thought his perceived problems resulted simply from his lack of experience in driving the van.

Brobbey asked plaintiff Adedotun Aderele to drive the van to Minnesota for the Easter

---

[1] Defendants GM and City Chevrolet settled with plaintiffs and no longer remain in the litigation.

retreat, which took place from April 18, 2003, to April 20, 2003. While en route to their destination on the I-94 expressway, Aderele noticed wobbling or shaking of the steering wheel at speeds between 40 and 50 miles per hour. As Aderele believed that the air pressure in one of the front tires might be the problem, he left the highway and inspected the tires at the next gas station. Noting that the tire pressure seemed normal, Aderele continued driving.

At the end of the retreat, on April 20, 2003, Aderele began the drive back to Chicago. After driving for a couple of hours, he noticed that his hands continually drifted from left to right. However, because Aderele was feeling tired and sleepy , he believed his drowsiness was the cause. In turn, Gladys Shabangu, John Brobbey's wife, offered to take over driving while Aderele rested.

At about 4 p.m., Shabangu noticed that whenever she reduced speed by applying the brakes, the van wobbled and the steering wheel shook. After about one hour of driving the van, she told everyone who was awake that she would exit to give the van back to Aderele. As Shabangu exited the highway, she was traveling at a speed of 75 miles per hour. She applied her foot on the brake pedal, but the van failed to brake. When she attempted to depress the brake pedal again, the vehicle began rolling over and she took her foot off the brake and just held onto the steering wheel. Shabangu lost control and the van rolled over several times until it stopped. Several of the passengers were forcefully ejected, and many sustained serious and permanent injuries as a result.

Brobbey and Shabangu notified Enterprise of the incident and alleged mechanical defect or brake malfunction. On May 1, 2003, Elco Administrative Services (Elco), the company

handling claims for Enterprise, sent a letter to Brobbey and Shabangu stating:

"Due to the allegation you both made that the above vehicle had a brake malfunction, we've filed a claim with the manufacturer. We will contact you both and State Farm once we receive the manufacturer's position."

Enterprise also conducted its own investigation and concluded there was no malfunction with the brake system. On September 23, 2003, Enterprise sent a certified letter to Brobbey and Shabangu and informed them that, having found no defect or malfunction, Enterprise would be releasing the van on September 30, 2003, unless the recipients responded. However, because of serious permanent injuries sustained by family members, plaintiffs were unable to respond to Enterprise's letter. Enterprise released the van on October 17, 2003. In turn, the van was sold at auction to Lombard Auto Wreckers and was thereafter destroyed on January 10, 2004. Subsequently, in June or July 2004, Aderele asked Shabangu to find out where the van was, since he was interested in learning what caused the accident, but was informed that it had been scrapped.

On April 18, 2004, plaintiffs Brobbey and Shabangu, as guardians of the estate of Enoch Kofi-Brobbey, with probate court approval and in payment of a medical lien released Mrs. Brobbey, State Farm, "and all other persons, firms, or corporations liable or who might be claimed to be liable." Nipassa Kodzovi, Mr. Aderele, and the minor plaintiff Aderele also executed similar releases.

On April 18, 2005, plaintiffs filed suit, alleging negligence against Enterprise, and both negligence and strict liability against GM and City Chevrolet, asserting that the van was prone to

4

roll over, had defective airbags, wobbled and was uncontrollable, and that the brakes failed during normal operation. After discovery commenced, plaintiffs learned that in April 2004, GM had recalled all 2003 Astro Chevrolet vans due to a suspension part defect that could result in a loss of control. The recall vehicle identification number included the particular van that Brobbey had rented from Enterprise. According to plaintiffs, the defect in the Astro vans was discovered on May 19, 2003, upon inspection in Japan. Internal GM documents disclosed an "interference condition" with the rubber boot that lubricates the lower ball joint in the front end suspension, which was making contact with the steering knuckle and resulting in a cut in the rubber boot. This breach of the lubricating mechanism could result in a loss of control and an accident.

On April 1, 2004, in connection with its safety recall, GM released a pertinent bulletin relied upon by plaintiffs.[2] In the bulletin, GM explained that the owner's manual for the van provided that the recommended lubrication interval for the ball joints for short trip/city driving was either 3,000 miles or 3 months, whichever occurred first, or 7,500 miles or 12 months for long trip/highway driving. The bulletin further stated that the technician should inspect for cut or torn boots and ball joint wear, but "[i]n this case, the technician may not realize that the boot is cut, because the ball joint rubber boot is designed to purge grease out of the vent" and the "technician may not be able to distinguish purged grease from grease that might be leaking though a cut boot."

In the case *sub judice*, according to the affidavit of the claims administrator, there was no

---

[2] It is unclear from the record, and from plaintiffs' appendix of table of contents of the record in their brief, whether these exhibits are part of the second amended complaint.

documentation of any repair, inspection, or maintenance of the van from the date of its manufacture, up until the date of the accident. As of that date, the van had been driven well over 3,000 miles.

During discovery, plaintiffs' experts, Phillip Grismer and Gerald Rosenbluth, testified that the short trip maintenance schedule of 3,000 miles should have been followed by a car rental company such as Enterprise. In their affidavits and in their deposition testimony, both Grismer and Rosenbluth also opined that Enterprise failed to timely lubricate the ball joints on the van and that, had the lubrication been timely done, the defect would have been identified and could have prevented the accident. Although Rosenbluth testified that there is potential for excessive ball joint wear with either operator error or imbalance in the front tires causing vehicular directional instability, it appeared from the photograph that the ball joint did not separate and that there was no braking problem. Rosenbluth believed that the primary problem with the van was that the vehicle was "out of balance," where the "steering knuckle is squeezing the boot on one side," which would have shown up on the tire wear and tread had there been an inspection for maintenance at 3,000 miles. The secondary problem was the ball joint issue. According to Rosenbluth, a technician would readily observe that the steering knuckle was squeezing the boot on one side and would know that would be a point of abrasion. Further, the pressure on the boot "would be obvious and significant."

Grismer acknowledged that just because the van had the condition does not mean that the boot in this case was cut. However, given evidence of a failed ball joint, a damaged lower control arm, a rolled over vehicle, and testimony from witnesses that there were steering and

brake issues prior to the collision, Grismer concluded there was a failure of the front suspension on the left-hand side. Grismer also opined that Enterprise should have followed the shorter 3,000 maintenance schedule because the van was a rental vehicle and Enterprise would have no idea of the nature and extent of usage. Had Enterprise done a maintenance check and had the chassis been lubricated, Grismer believed that the lower ball joint defect would have been discovered.

Enterprise's expert, Edward Mays, was retained to examine the van; however, the focus of his investigation was solely the brakes. He did not specifically inspect the suspension, nor was he aware of the safety recall by GM. Mays observed the left front tire was flat, but did not notice any misalignment. Further, although Mays did not check the front suspension, he testified that in inspecting the brakes, he could not avoid seeing the front suspension, and he did not recall observing anything abnormal. He offered no opinion as to the cause of the accident.

Lyndon Lie, an engineer for GM, testified that he saw the suspension system on a 2003 Astro van, but did not review the GM inspection report of the van at issue and could not tell from the photographs taken of the van whether it had the particular defect which was the subject of the recall. However, he agreed that there was a design defect in all of the 2003 Astro vans in the steering knuckle, which is part of the front suspension system that is critical in a driver's ability to control the van when the vehicle is in motion.

Peter Rogulsky, an expert retained by GM, testified at his deposition that he learned that this van was part of the GM safety recall. Rogulsky acknowledged that the photographs depicted that the left front lower control arm was bent, but he opined that the rollover caused this dent. Rogulsky further testified that the photographs showed that the ball joint was not worn.

7

However, he did not know if the left front lower ball joint rubber boot was cut. He conceded that the photographs did not show whether there was interference between the left front lower ball joint rubber boot and the steering "knuckle," or whether any grease was present on the left front lower ball joint. Further, Rogulski opined that the shaking described by Brobbey and Aderele was "most likely caused by rust on the brake rotors common in rental vehicles." Rogulsky opined that he believed that the shaking Aderele described "was most likely caused by tire imbalance."

On February 22, 2008, plaintiffs filed their second amended complaint, again alleging negligence against Enterprise and adding a strict liability count, asserting that at the time the vehicle left control of Enterprise, it was unreasonably dangerous and defective. The amended complaint also brought a count against Enterprise for spoliation of evidence in disposing of the van. Plaintiffs alleged that they were not informed of the product safety recall, notwithstanding that GM and Enterprise knew or should have known of the defect prior to disposal of the van.

Thereafter, Enterprise and GM moved to dismiss the spoliation of evidence claim pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)). On July 17, 2008, the circuit court dismissed this count with prejudice, concluding that the certified letter Enterprise sent to Brobbey and Shabangu on September 23, 2003, was sufficient to put all plaintiffs on notice of the necessity to preserve the van.

Enterprise also moved for summary judgment on the strict liability and negligence claims, alleging that plaintiffs failed to state a cause of action because of a lack of notice of a defect and lack of a showing of proximate cause, and on the basis that any cause of action was barred by the

releases signed by plaintiff's under Aderele's auto insurance policy. The circuit court granted summary judgment on both the strict liability and negligence claims based solely on Enterprise's lack of notice of the defect from the manufacturer. Thereafter plaintiffs timely appealed.

ANALYSIS

Plaintiffs assert that the trial court erred in granting summary judgment on both the strict liability and negligence counts on the rationale that Enterprise had no notice of any alleged defect. Plaintiffs maintain that notice is not a defense to a strict liability claim. Plaintiffs further assert that Enterprise in fact had constructive and/or actual notice of a defect in the van where: (1) inspection or service of the van as recommended by the owner's manual would have brought the defect to light; and (2) based upon Brobbey's complaints of problems with the vehicle at time of the rental.

Summary judgment is appropriate when the pleadings, depositions and admissions show that "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). See also *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335, 775 N.E.2d 987, 993-94 (2002). Though summary judgment can aid in the expeditious disposition of a lawsuit, it remains a drastic measure and should be allowed only "when the right of the moving party is clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). We review orders granting summary judgment *de novo*. *Dardeen v. Kuehling*, 213 Ill. 2d 329, 335, 821 N.E.2d 227, 230 (2004).

Enterprise argued below that it was entitled to summary judgment based on section 388 of the Restatement (Second) of Torts, and the trial court agreed, basing its judgment on this

ground. Restatement (Second) of Torts, §388 (1965) (hereafter Restatement). Section 388 of the Restatement delineates a duty to warn of known defects under negligence principles. In the case *sub judice*, the circuit court did not address whether the pleadings on file presented genuine issues of material fact on the elements of the strict liability claim, instead relying solely on Restatement section 388. "To establish a *prima facie* case in strict liability, a plaintiff must plead and prove three elements: (1) that an injury resulted from a condition in the product; (2) the condition of the product was unreasonably dangerous; and (3) the condition existed at the time the product left the manufacturers control." *Saieva v. Budget Rent-A-Car of Rockford*, 227 Ill. App. 3d 519, 531, 591 N.E.2d 507, 515 (1992), *appeal denied*, 146 Ill. 2d 651, 602 N.E.2d 476 (1992), citing *Norman v. Ford Motor Co.*, 160 Ill. App. 3d 1037, 1041, 513 N.E.2d 1053, 1055 (1987); *D'Olier v. General Motors Corp.*, 145 Ill. App. 3d 543, 547, 495 N.E.2d 1040, 1043 (1986). At common law, all entities in the distributive chain of an allegedly defective product, including manufacturers, sellers, wholesalers, distributors and lessors of the product, are strictly liable in products liability actions for injuries resulting from that product. *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 887 N.E.2d 569 (2008).

We are of course cognizant that section 2-621 of the Code of Civil Procedure (735 ILCS 5/2-621 (West 2008)), enacted in 1979, known as the "seller's exception," allows for the dismissal of a nonmanufacturer defendant from a strict liability product claim upon certifying the correct identity of the manufacturer of the allegedly defective product. *Murphy*, 381 Ill. App. 3d at 770, 887 N.E.2d at 573. Section 2-621(b) provides:

> "Once the plaintiff has filed a complaint against the manufacturer or

manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, the court shall order the dismissal of a product liability action based on any theory or doctrine against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section." 735 ILCS 5/2-621(b) (West 2008).

To overcome a motion under this section, plaintiffs must show that the certifying defendant exercised some significant control over the design or manufacture of the product, or had actual knowledge of or created the defect. 735 ILCS 5/2-621(c) (West 2008); *Saieva*, 227 Ill. App. 3d at 526, 591 N.E.2d at 511. "[T]he purpose of section 2-621 is to allow a nonmanufacturing defendant, who has not been shown to have created or contributed to the alleged defect, to defer liability upstream to the ultimate wrongdoer, the manufacturer." *Saieva*, 227 Ill. App. 3d at 526, 591 N.E.2d at 511, citing *Cherry v. Siemans Medical Systems, Inc.*, 206 Ill. App. 3d 1055, 1060-61, 565 N.E.2d 215, 218 (1990); *Logan v. West Coast Cycle Supply Co.*, 197 Ill. App. 3d 185, 190-91, 553 N.E.2d 1139, 1142 (1990).

Here, the manufacturer of the van, GM, has settled its portion of this lawsuit with plaintiffs. Enterprise had no control over the design or manufacturing of the van, and thus this prong is irrelevant. Although plaintiffs do not cite to the above statutory provisions, they argue that Enterprise had knowledge the van had a problem at the time plaintiffs rented it, and on this basis should not be granted summary judgment on strict liability. Enterprise argues that it did not have prerental notice of any defect or potentially dangerous condition with the van and plaintiffs' complaints at the time were never "linked" to the specific defect. Thus, the relevant question is

whether Enterprise had actual knowledge of the manufacturing defect that made the van unreasonably dangerous, *i.e.*, the problem with the rubber boot.

Under section 2-621(c), a nonmanufacturer must have "actual knowledge of the unreasonably dangerous nature of the physical characteristics/design of the product, not just actual knowledge that the physical characteristics/design existed, in order to avoid dismissal." *Murphy*, 381 Ill. App. 3d at 775, 887 N.E.2d at 576.

In order for Enterprise to incur strict liability for the manufacturing defect, plaintiffs had to demonstrate that Enterprise had knowledge of that defect. Plaintiffs' claim that they made Enterprise generally aware of a problem with shaking or steering prior to the accident fails to meet that test. Here, while the accident occurred in January 2003, the recall was in April 2004. Moreover, it is undisputed that, although plaintiffs insist they complained of the steering and wobbling, Enterprise did not know of the manufacturing defect until the recall bulletin a year after the accident occurred. Thus, there is no genuine issue of material fact that Enterprise did not have actual knowledge of this manufacturing defect. The court therefore correctly found that Enterprise was not put on actual notice of the dangerous condition until it was notified after the recall regarding the problematic situation with the ball joint leak. Pursuant to our *de novo* review, we find that the circuit court properly granted summary judgment to Enterprise on plaintiffs' strict liability claim pursuant to section 2-621. See *Saieva*, 227 Ill. App. 3d at 526, 591 N.E.2d at 511. On this basis, we affirm that portion of the court's judgment.

We next address the plaintiffs' negligence claim. To establish a cause of action for negligence, a plaintiff must show the following elements: the existence of a legal duty owed by

12

the defendant to the plaintiff; breach of that duty; a resulting compensable injury to the plaintiff; and that the breach was the proximate cause of the injury. *South Side Trust and Savings Bank of Peoria v. Mitsubishi Heavy*, No. 1-09-0148, slip. op. at 19 (March 31, 2010), citing *Miller v. Dvornik*, 149 Ill. App. 3d 883, 891, 501 N.E.2d 160, 166 (1986). Unlike strict liability, under a theory of negligence it is not sufficient to show that the product is defective or not reasonably safe; the plaintiff must also show that the defendant breached a duty owed to plaintiff. *Cornstubble v. Ford Motor Co.*, 178 Ill. App. 3d 20, 24, 532 N.E.2d 884, 886 (1988). Further, not only must plaintiff prove that the product was not reasonably safe, but also that the defendant knew, or in the exercise of ordinary care should have known, of that unsafe condition. *Cornstubble*, 178 Ill. App. 3d at 24, 532 N.E.2d at 886 (1988). "In a negligence action, a defendant may rebut plaintiff's proof by showing its exercise of reasonable care through evidence of its testing and inspection procedures [citation], or evidence that it complied with industry custom and practice. [Citation.]" *Cornstubble*, 178 Ill. App. 3d at 24-25, 532 N.E.2d at 886. Again, our review of a grant of summary judgment is *de novo*. *Dardeen*, 213 Ill. 2d at 335, 821 N.E.2d at 230.

In its ruling, the circuit court again relied on section 388 of the Restatement. Section 388 of the Restatement delineates a duty to warn of known defects under negligence principles for suppliers of chattel and provides the following:

"§ 388 Chattel Known to Be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the

consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a)      knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b)      has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c)      fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." Restatement (Second) of Torts §388, at 300-01 (1965).

However, though section 388 applies to all suppliers of chattel, liability thereunder pertains to circumstances where the chattel is known to be dangerous by the supplier. See Restatement (Second) of Torts, §388(a) (1965). Here, as noted, there is no genuine issue of material fact that Enterprise did not have knowledge of the defect until the manufacturer recall, which was issued after the lease of the vehicle. Further, the Restatement provides the rules for suppliers "are equally applicable to all persons who in any way or for any purpose supply chattels for the use of others or permit others to use their chattels," including section 388, but "[t]he peculiar rules applicable to donors, lenders, and lessors of chattels are stated in §§ 405-408." Restatement (Second) of Torts, Scope Note, at 300. Section 408 provides:

"§ 408 Lease of Chattel for Immediate Use

One who leases a chattel as safe for immediate use is subject to liability to those

whom he should expect to use the chattel, or to be endangered by its probable use, for physical harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it." Restatement (Second) of Torts §408, at 366 (1965).

Section 408 regarding the liability of lessors of chattel more appropriately applies. Comment a to section 408 provides:

"a. When lessor must inspect. The fact that a chattel is leased for immediate use makes it unreasonable for the lessor to expect that the lessee will do more than give it the most cursory of inspections. The lessor must, therefore, realize that the safe use of the chattel can be secured only by precautions taken by him before turning it over to the lessee. *** If the chattel is made by a third person, the lessor is required to exercise reasonable care to inspect it before turning it over to the lessee." Restatement (Second) of Torts §408, Comment a, at 366-67 (1965).

Unlike section 388, section 408 does not require prior actual knowledge of the condition but, rather, sets forth a separate duty for lessors to exercise reasonable care. Plaintiffs' negligence action is based not only on the existence of the manufacturing defect or Enterprise's alleged knowledge of same, but also on Enterprise's failure to conduct a reasonable inspection of the van at 3,000 miles, pursuant to the manual. Thus, contrary to the circuit court's reliance on section 388, we find that section 408 more appropriately applies to the negligence claim against Enterprise.

15

1-08-3474

It is well established that " 'a bailor is liable to an injured third person if (1) he supplied the chattel in question[;] (2) the chattel was defective at the time it was supplied[;] (3) the defect could have been discovered by a reasonable inspection, when inspection is required (*i.e.*, where the danger of substantial harm because of a defect is great, as we deem it is here)[;] and (4) the defect was the proximate cause of the injury.' " *Brooks v. Essex Crane Rental Corp.*, 233 Ill. App. 3d 736, 739-40, 599 N.E.2d 111, 113 (1992), quoting *Huckabee v. Bell & Howell, Inc.*, 47 Ill. 2d 153, 158, 265 N.E.2d 134, 137 (1970). See also *Retzler v. Pratt & Whitney Co.*, 309 Ill. App. 3d 906, 916, 723 N.E.2d 345, 353 (1999).

Enterprise nonetheless maintains that the evidence here is undisputed that even had the van been inspected, this manufacturing defect would not have discovered. Regarding this allegation, the trial court stated, "I don't believe there is any expert testimony [the defect] could have been found at that point."

Apparently, the circuit court did not recall the opinions of both of plaintiffs' experts. As noted, Rosenbluth opined that a technician performing a lubrication of the ball joint at 3,000 miles would see a compromised ball joint boot with lubricant emanating from that region and would readily observe that the steering knuckle was squeezing the boot on one side and would know, as a technician, that that would be a point of abrasion, and the pressure on the boot "would be obvious and significant." Plaintiff's other expert, Grismer, also opined that Enterprise should have followed the shorter 3,000 maintenance schedule because the van was a rental vehicle and it would have no idea what kind of usage there was, so one would err on the side of caution. Grismer opined that, had Enterprise done a maintenance check and had the chassis been

16

lubricated, Enterprise would have discovered the lower ball joint defect. Notably, it is undisputed that the maintenance records for the subject van have not been presented. Hence, we find that plaintiffs have sufficiently alleged and also presented evidence that Enterprise should have inspected the van at 3,000 miles and that upon a reasonable inspection the defect would have been discovered.

Nonetheless, defendant further maintains that summary judgment on the negligence claim was appropriate given the undisputed evidence establishing it was Shabangu's negligence in speeding on the exit ramp that caused the accident. However, in response to Enterprise's motion for summary judgment, plaintiffs specifically denied that Shabangu was speeding on the exit ramp but rather maintained that she lost control of the van due to the design defect, which caused the van to be unable to slow down or stop. Thus, we find that such issues are disputed factual questions, which are genuine issues of material fact and are wholly inappropriate for us to resolve. Although Enterprise admits that the van in this case was part of the recall, it disputes that this defect caused the accident in this case. Enterprise argues that "the physical and diagnostic evidence simply does not corroborate that she ever braked on the ramp." Yet, in making these arguments, Enterprise is essentially weighing the evidence. The instant proceedings are rife with factual issues concerning the proximate cause of this accident.

Though defendant repeatedly underscores evidence of Shabangu's asserted negligence in speeding while exiting on the ramp, this argument hinges on the determination of proximate cause and would go toward establishing comparative negligence. "The question of proximate cause is ordinarily one for the jury." *King v. Petefish*, 185 Ill. App. 3d 630, 641, 541 N.E.2d 847,

854 (1989), citing *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74 (1954), and *Felty v. New Berlin Transit, Inc.*, 71 Ill. 2d 126, 374 N.E.2d 203 (1978). "Under the theory of pure comparative negligence, it is also the fact finder's duty to determine the relative degree of fault of the parties and reduce the plaintiff's award accordingly." *King*, 185 Ill. App. 3d at 641, 541 N.E.2d at 854. Here, there is a genuine issue of material fact as to whether Shabangu was negligent in her use of the van or whether Enterprise supplied a van with a defect that caused the accident, which could have been discovered if Enterprise had exercised reasonable inspection. Viewing all the evidence in the light most favorable to plaintiffs, as we must, we reverse the grant of summary judgment on the negligence claim.

Finally, we address plaintiffs' assertion that the trial court erred in granting dismissal of their spoliation claim. When a court rules on a section 2-619 motion to dismiss, it "must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189, 680 N.E.2d 265, 270 (1997). "The court should grant the motion only if the plaintiff can prove no set of facts that would support a cause of action." *In re Chicago Flood Litigation*, 176 Ill. 2d at 189, 680 N.E.2d at 270. "Our review of a section 2-619 dismissal is *de novo*." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368, 799 N.E.2d 273, 278 (2003).

Under Illinois law, spoliation of evidence is a form of negligence; proof of spoliation requires a showing that the defendant owed the plaintiff a duty to preserve evidence, breached that duty, and thereby proximately caused the plaintiff to be unable to prove the underlying cause of action. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 194-95, 652 N.E.2d 267, 270,

(1995). This is a two-step analysis; "[a]s a threshold matter, we must first determine whether such a duty arises by agreement, contract, statute, special circumstance, or voluntary undertaking." *Dardeen*, 213 Ill. 2d at 336, 821 N.E.2d at 231, citing *Boyd,* 166 Ill. 2d at 195, 652 N.E.2d at 270-71. "If so, we must then determine whether that duty extends to the evidence at issue-*i.e.*, whether a reasonable person should have foreseen that the evidence was material to a potential civil action." *Dardeen*, 213 Ill. 2d at 336, 821 N.E.2d at 231, citing *Boyd*, 166 Ill. 2d at 195, 652 N.E.2d at 271.

Enterprise maintains that plaintiffs Brobbey and Shabangu themselves were culpable for not preserving the van because they "showed no interest in cooperating with Enterprise to investigate their claim" and "simply neglected their own rights." In support, Enterprise cites to *Burlington Northern & Santa Fe Ry. Co. v. ABC-NACO*, 389 Ill. App. 3d 691, 713, 906 N.E.2d 83, 102 (2009) ("NACO effectively concedes that its representatives were at the derailment site and did not request preservation of the items that they now discuss"). However, we find *Burlington Northern & Santa Fe Ry. Co.* distinguishable, as there, NACO's representative was actually present at the inspection site, and even took photographs that were later misplaced, but thereafter did not request further examination of the site or request that any items of evidence be preserved. *Burlington Northern & Santa Fe Ry. Co.*, 389 Ill. App. 3d at 713, 906 N.E.2d at 102. Here, on the contrary, plaintiffs were not present for the inspection of the van and did, in fact, later request to inspect the vehicle.

Enterprise claims that plaintiffs had nearly four months' opportunity to inspect the van and/or request its preservation. Yet, the letter sent to plaintiffs was dated September 23, 2003,

and only provided plaintiffs until September 30, 2003, to request preservation of the van, thus providing plaintiffs with less than a week's time to respond. We find imposing such a short time-frame on plaintiffs to respond extremely troubling, especially given the severity of the accident and plaintiffs' injuries. Further, Enterprise offers no authority for finding a waiver of a clearly established duty to preserve evidence, nor has our research revealed any.

Enterprise further argues that "to the extent [p]laintiffs allege, and the circumstances show, that Enterprise assumed a duty to preserve the van, it is axiomatic that an undertaken duty is self-limited by the scope of the undertaking itself." Curiously, however, Enterprise cites no authority for this asserted "axiomatic" proposition either. While generally this proposition is true for a voluntary undertaking, we find no such limitation in *Boyd* and its progeny regarding the duty to preserve evidence for potential litigants.

On the contrary, we find that Illinois courts have not imposed such a limitation. The *Jones* court held that the plaintiff satisfied the elements of a spoliation claim by alleging that the third party defendant had a duty to preserve the wheel assembly involved in an accident, where it was alleged that a reasonable party would have recognized that the wheel assembly was material to the negligence action. *Jones*, 322 Ill. App. 3d at 423, 752 N.E.2d at 13. The facts were sufficient to impose the duty to preserve the wheel assembly on both the insurer and the owner of the vehicle who was in possession of the wheel assembly after the accident.

Enterprise further maintains that plaintiffs' assertion that the recall of the 2003 Chevy Astro vans constituted such "special circumstances" under *Boyd* fails factually because of the chronology of events and because of the absence of any showing that Enterprise had any

20

knowledge of the recall prior to the destruction of the van. However, our supreme court in *Dardeen* addressed the issue of what constitutes a "special circumstance" and analyzed it in the following manner:

> "We hinted at what special circumstances might give rise to a duty to preserve evidence in *Miller v. Gupta*, 174 Ill. 2d 120 (1996). In *Miller*, a medical malpractice plaintiff's attorney requested X rays from the plaintiff's doctor. The doctor complied and obtained the X rays. Before taking the X rays to the hospital to copy them, he placed them on the floor of his office near the wastebasket. The X rays disappeared. A housekeeping employee who cleaned the doctor's office guessed that she disposed of the X rays, which were later incinerated. We remanded to allow the plaintiff to amend her negligent spoliation claim to satisfy *Boyd*. *Miller*, 174 Ill. 2d at 129.
>
> Unlike the plaintiff in *Miller*, Dardeen never contacted the defendant to ask it to preserve evidence. Dardeen never requested evidence from State Farm, and he never requested that State Farm preserve the sidewalk or even document its condition. And though he visited the accident site hours after he was injured, he did not photograph the sidewalk. Additionally, unlike the doctor in *Miller*, State Farm never possessed the evidence at issue and, thus, never segregated it for the plaintiff's benefit." *Dardeen*, 213 Ill. 2d at 338, 821 N.E.2d at 232.

In adherence to the analysis employed in *Dardeen*, we discern that Enterprise had a duty to exercise reasonable care to preserve the van for the benefit of plaintiffs as potential litigants. Notably, here, plaintiffs specifically complained both before and after the accident that there was

some defect that caused the van to wobble, the steering wheel to shake, and the brakes to malfunction. Enterprise then undertook to preserve the van to conduct its own inspection of plaintiffs' allegations of malfunction. The van was in the possession and control of Enterprise. According to its letter, Enterprise also segregated the van for the benefit of plaintiffs. Further, though Enterprise argues they were not timely, plaintiffs in fact did request to inspect the van. These facts constitute the "special circumstance," and not merely the specific fact of the manufacturer recall. The plaintiffs claim the destruction of the van, Enterprise's letter notwithstanding, was not an exercise of reasonable care, and we cannot say as a matter of law that the allegation here is deficient. Under *Boyd* and its progeny, we perceive that plaintiffs sufficiently alleged that a reasonable person would have foreseen that the van was material evidence to a potential civil action.

Lastly, defendant asserts that it had no relationship with the other nine passengers that could give rise to a circumstantial duty to preserve the van, and that plaintiffs cannot rely on foreseeability of harm alone. Enterprise argues that it does not owe any duty to the other plaintiffs to preserve the van. However, a similar argument was rejected in *Stinnes Corp. v. Kerr-McGee Coal Corp.*, 309 Ill. App. 3d 707, 722 N.E.2d 1167 (1999), where the defendant argued that the plaintiff had no pretort relationship with the plaintiff which would give rise to a duty to preserve evidence, and that the voluntary assumption of a duty did not flow to the plaintiff because, under *Boyd*, that duty only flows to the personal injury tort victims. The court rejected this argument because there was no such distinction that could be gleaned from the *Boyd* opinion, and in fact, case law holds to the contrary. *Stinnes Corp.*, 309 Ill. App. 3d at 715, 722

22

N.E.2d at 1173. The court cited *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 692 N.E.2d 286 (1998), where our supreme court held that the plaintiff's destructive testing of an automobile's allegedly defective power-steering components prior to the commencement of a lawsuit warranted the imposition of a discovery sanction against the plaintiff.

In *Shimanovsky*, the defendant sought the imposition of a sanction after the plaintiff's experts either altered the condition of or partially destroyed the power-steering components. Our supreme court held that a potential litigant owes a duty to an opposing party "to take reasonable measures to preserve the integrity of relevant and material evidence." *Shimanovsky*, 181 Ill. 2d at 121, 692 N.E.2d at 290. The *Stinnes Corp.* court reasoned, "the *Shimanovsky* court did not limit its analysis to plaintiffs in personal injury lawsuits, but the court said that any 'potential litigant' owes the duty to preserve evidence." *Stinnes Corp.*, 309 Ill. App. 3d at 716, 722 N.E.2d at 1173. "A plaintiff in a negligence case based upon spoliation of evidence need only allege that a reasonable person in the defendant's position should have foreseen that the evidence in question was material to a potential civil action. There is no requirement that the plaintiff allege the existence of any 'special relationship' which would give rise to that knowledge." *Jones*, 322 Ill. App. 3d at 422-23, 752 N.E.2d at 12. A duty extends to particular evidence if a reasonable person should have foreseen that the evidence was material to a potential civil action. *Dardeen*, 213 Ill. 2d at 336, 821 N.E.2d at 231. Thus, Enterprise cannot sustain the dismissal of the spoliation claim on this argument either.

*Boyd* remains our supreme court's "watershed pronouncement on spoliation of evidence." See *Dardeen*, 213 Ill. 2d at 335, 821 N.E.2d at 231. Our supreme court held that the trier of fact

should hear the negligent spoliation claim concurrently with the underlying suit on which it is based because "[i]f a plaintiff loses the underlying suit, only the trier of fact who heard the case would know the real reason why." *Boyd*, 166 Ill. 2d at 198, 652 N.E.2d at 272. Further, the court reasoned, "[t]his factor is important because a spoliator may be held liable in a negligence action *only* if its loss or destruction of the evidence caused a plaintiff to be unable to prove the underlying suit." (Emphasis in original.) *Boyd*, 166 Ill. 2d at 198, 652 N.E.2d at 272. The amount of damages should be determined by the trial court and the trier of fact after a full trial on the merits. *Boyd*, 166 Ill. 2d at 198, 652 N.E.2d at 272. We do not apply an evidentiary presumption, as "[a] plaintiff should not be allowed to recover with an evidentiary presumption where it can be proven that the underlying suit is meritless." *Boyd*, 166 Ill. 2d at 200, 652 N.E.2d at 273. Thus, the underlying negligence claim must proceed, based on the facts before us, and then the issue of spoliation should be decided. Further, even if the underlying negligence claim fails, a claim for spoliation may still survive. See *Miller v. Gupta*, 174 Ill. 2d 120, 129-30, 672 N.E.2d 1229, 1233-34 (1996) (although the plaintiff's underlying claim was procedurally defective and required dismissal, the plaintiff could still amend the complaint proceed with the spoliation action).

CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment on the strict liability count against Enterprise, reverse the grant of summary judgment on the negligence claim and dismissal of the spoliation claim, and remand this case for further proceedings consistent with this opinion.

Affirmed in part and reversed in part.  Cause remanded.

HOWSE and LAVIN, JJ., concur.