LUVERSIA CHERRY, Plaintiff-Appellant, v. SIEMANS MEDICAL SYSTEMS, INC., Defendant-Appellee.

First District (5th Division) No. 1—89—1563

Opinion filed December 7, 1990.

1056

Lane & Munday, of Chicago (John J. Perconti, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Gregory L. Cochran, and Christine L. Olson, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff Luversia Cherry (Cherry) appeals from an order of the circuit court of Cook County, dated October 22, 1987, dismissing her strict liability in tort action against defendant, Siemans Medical Systems (Siemans) and from an order of the court dated May 17, 1989, denying her motion to vacate the dismissal order and reinstate her cause against Siemans. The facts, which are undisputed, are as follows.

On June 5, 1985, Cherry filed a complaint against Siemans and W.C. Heraevs, a/k/a Hanau Manufacturing Company (Heraevs), charging that a "surgical lamp horizontal arm," designed and manufactured by Heraevs and distributed and installed by Siemans, had broken and fallen on her during a surgical procedure at Provident Hospital on June 9, 1983. Cherry alleged that she incurred injuries when this defectively designed horizontal arm had failed because its brackets and fittings were unable to support the weight of the lamp.

Cherry served Siemans with notice and summons on November

27, 1985. Siemans filed an appearance on February 6, 1986, and an answer on March 11, 1986, in which it admitted to the sale and distribution of the surgical lamp, but denied liability. More than a year later, on April 23, 1987, Siemans filed a motion seeking dismissal from the cause of action pursuant to section 2—621 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—621), certifying in an attached affidavit that "W.C. Heraevs, a/k/a Hanau Manufacturing Company," was the manufacturer of the allegedly defective product. Cherry contested this motion, but not on the grounds that Siemans was independently responsible for the defective product in some way. Rather, plaintiff argued that, although she had named Heraevs (the manufacturer) as a party-defendant in her complaint, she had opted not to proceed against Heraevs, a corporation located in the Federal Republic of West Germany, because it appeared that this foreign manufacturer was not amenable to service of process or subject to the jurisdiction of Illinois courts. Plaintiff also contended that Siemans should not be allowed to bring a section 2—621 motion at that time because it was not timely since the statute provided that this type of motion may be brought by a nonmanufacturing defendant "upon answering or otherwise pleading."

Despite plaintiff's objections, the trial court granted defendant's motion and dismissed Siemans from the case in an order dated October 22, 1987. After Siemans' dismissal, plaintiff, for the first time, attempted to obtain service on Heraevs. Through additional investigation, plaintiff learned that the correct identity of the manufacturer was, in fact, "W.C. Heraeus, Gmbh." A special international process server was then appointed, and on January 5, 1988, the manufacturer was served with summons and complaint.

On February 3, 1988, the manufacturer (W.C. Heraeus, Gmbh) filed a limited appearance, contesting the jurisdiction of the court. After a hearing held July 12, 1988, the trial court ruled that the manufacturer was not subject to the court's jurisdiction because it was not "doing business" in the State and dismissed it from the cause of action. Although plaintiff's counsel was present at the hearing, the dismissal of the foreign manufacturer was not contested by plaintiff and no argument was made suggesting that jurisdiction could be founded upon the commission of a "tortious act" within the jurisdiction.

On August 11, 1988, plaintiff filed a motion asking that the trial court vacate or reconsider its July 12, 1988, order dismissing W.C. Heraeus, raising at this time the trial court's failure to consider the "tortious act" basis for finding jurisdiction. In a second motion, plain-

tiff asked that the trial court vacate the October 22, 1987, order dismissing Siemans and reinstate Siemans as a party-defendant.

After several continuances, a hearing was held, at which time it was noted that plaintiff withdrew her motion to reconsider or vacate the order dismissing W.C. Heraeus, Gmbh. The trial court then denied plaintiff's motion to vacate the order dismissing Siemans and plaintiff then filed this timely appeal, to which the manufacturer is not a party. In the appeal plaintiff raises these two issues: (1) whether the trial court erred by granting Siemans' motion for dismissal, and (2) whether the trial court erred by denying plaintiff's motion to vacate the dismissal order and reinstate Siemans.

Plaintiff's first issue deals with an interpretation of subsections (a) and (b) of section 2—621 (Ill. Rev. Stat. 1987, ch. 110, pars. 2—621(a), (b)), which state:

> "(a) In any product liability action based in whole or in part on the doctrine of strict liability in tort commenced or maintained against a defendant or defendants other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage. The commencement of a product liability action based in whole or in part on the doctrine of strict liability in tort against such defendant or defendants shall toll the applicable statute of limitation and statute of repose relative to the defendant or defendants for purposes of asserting a strict liability in tort cause of action.

> (b) Once the plaintiff has filed a complaint against the manufacturer or manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section. Due diligence shall be exercised by the certifying defendant or defendants in providing the plaintiff with the correct identity of the manufacturer or manufacturers, and due diligence shall be exercised by the plaintiff in filing an action and obtaining jurisdiction over the manufacturer or manufacturers."

Initially, plaintiff argues that Siemans' dismissal from the case was erroneous because it was "premature." She contends that a literal reading of the statute requires that a nonmanufacturing defendant must remain a party-defendant until such time as the manufac-

turer has been named, served with process and required to answer or otherwise plead. Consequently, plaintiff claims that the trial court erred by dismissing Siemans on October 22, 1987, when she had not yet effectuated service of process upon the manufacturer. Additionally, plaintiff contends that she was prejudiced by Siemans' failure to timely certify the identity of the manufacturer and by Siemans' failure to correctly identify the manufacturer's name. We find no merit in any of these arguments.

 While it is true that the trial court dismissed Siemans prior to the time that plaintiff served process on the manufacturer and, for that reason, the dismissal was premature, we find this fact to be of little consequence. First of all, plaintiff named the manufacturer in the original complaint, which was filed June 5, 1985. The record clearly demonstrates that plaintiff refrained from serving the manufacturer merely because she did not wish to undergo the difficulty or incur the expense of serving a foreign defendant. In fact, even after Siemans certified the identity of the manufacturer in its section 2—621 motion filed on April 23, 1987, and after a hearing was held on the motion on July 15, 1987, and the motion was granted on October 22, 1987, plaintiff made no attempt to obtain service on the manufacturer until January 5, 1988. Plaintiff's failure to exercise due diligence in effectuating service on the manufacturer, although known to plaintiff from the onset, enabled the trial court to exercise its discretion in dismissing Siemans, subject to reinstatement, based upon the plaintiff's representation that the manufacturer would be served immediately.

 Secondly, a dismissal pursuant to section 2—621 of the Code is a nonfinal order, which may be vacated at any time upon a showing of error. (*Kellerman v. Crowe* (1987), 119 Ill. 2d 111, 518 N.E.2d 116.) Thus, a dismissal that is granted prematurely need not be deemed error if, ultimately, the defendant would have been entitled to a dismissal. In this case, once plaintiff served the manufacturer and the manufacturer answered or otherwise pleaded, on February 3, 1988, Siemans became entitled to dismissal. For this reason we do not find the October 22, 1987, dismissal to have constituted error.

 Furthermore, although it is true that all entities in the distributive chain of an allegedly defective product are subject to liability in a strict liability in tort action (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210; *Sims v. Teepak, Inc.* (1986), 143 Ill. App. 3d 865, 493 N.E.2d 721), this does not necessarily give a plaintiff the right to elect whom he/she will sue. The purpose of section 2—621 of the Code is to provide a "sellers exception"

whereby any nonmanufacturing defendant, who has not been shown to have created or contributed to the alleged defect, may defer liability to the ultimate wrongdoer, the manufacturer. (*Logan v. West Coast Cycle Supply Co.* (1990), 197 Ill. App. 3d 185, 553 N.E.2d 1139; *Sims v. Teepak, Inc.*, 143 Ill. App. 3d at 868.) In this manner the nonmanufacturing defendant may exempt himself from the cause of action at an earlier stage, thereby incurring less expense than if he were required to litigate the matter. We believe that this provision places upon a plaintiff an affirmative duty to file suit and obtain jurisdiction over a manufacturing defendant once the identity is known, especially in instances where the plaintiff does not allege that the nonmanufacturing defendant had any independent responsibility for the allegedly defective product and the only basis for liability is founded upon his role as a member of the distributive chain. (See *Logan v. West Coast Cycle Supply Co.*, 197 Ill. App. 3d at 192-93.) As stated earlier, in this case plaintiff was aware of the manufacturer, named the manufacturer in its original complaint and simply opted not to serve process upon the foreign manufacturer. We do not believe that a plaintiff has this option.

■ We also find no basis for finding that Siemans' over one-year delay in filing its section 2—621 motion and certifying the identity of the manufacturer in any way prejudiced plaintiff's position. The statute provides that when a strict liability in tort action is "commenced or maintained against a defendant or defendants *other than the manufacturer*, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 110, par. 2—621(a).) This provision has not been interpreted to mean that a nonmanufacturing defendant must file a section 2—621 motion and affidavit certifying the identity of the manufacturer, if at all, at the time that he answers the complaint. (See *Lamkin v. Towner* (1990), 138 Ill. 2d 510.) Furthermore, if this interpretation were applied, it would render meaningless the other terms, namely "or otherwise pleads" and "due diligence shall be exercised by the certifying defendant or defendants in providing the plaintiff with the correct identity of the manufacturer or manufacturers."

■ Since an additional purpose of the section 2—621 provision is to facilitate discovery of the manufacturer where such is not known by the injured party (*Sims v. Teepak, Inc.*, 143 Ill. App. 3d at 868), this court is of the belief that the nonmanufacturing defendant's duty is to provide the plaintiff with the identity of the manufacturer in a timely fashion and to avoid prejudicing plaintiff's legal position, if it

hopes to seek dismissal from the suit pursuant to the statute. If, however, as in this case, the identity of the manufacturer is already known to the plaintiff and the manufacturer has been named as a party-defendant, the plaintiff has an obligation to pursue the manufacturer, and there seems to be no reason to require the nonmanufacturing defendant to file its section 2—621 motion and affidavit at the time of answering, since there is no danger that the failure to certify will result in plaintiff's inability to file suit against the manufacturer within the limitations period.

We realize that one purpose of the provision, as stated earlier, is to allow the nonmanufacturing defendant an opportunity to avoid expensive litigation by providing a means whereby he may exempt himself from the suit at an early stage. For this reason, it would be in that party's best interest to bring the motion at an early stage. However, unless the plaintiff can point to some actual prejudice attributable to the delay, we find no reason to limit the nonmanufacturing defendant's ability to take advantage of the benefit that section 2—621 of the Code affords.

■ Additionally, we note that a nonmanufacturing defendant may not always be in a position to file a section 2—621 motion immediately, before discovery has been obtained, since it may not be clear at that time whether the plaintiff is alleging that the nonmanufacturing defendant contributed to the alleged defect or was liable on some independent basis. In the present case plaintiff filed its cause of action naming both Siemans and the manufacturer on June 5, 1985, but did not obtain service on Siemans until November 27, 1985. Siemans filed an appearance and notice to produce on February 6, 1986, and at the same time requested an extension of the time in which to answer. On March 11, 1986, although plaintiff had not yet responded to the interrogatories, Siemans filed a general denial. On April 10, 1986, and again on May 27, 1986, Siemans filed additional notices, asking that plaintiff comply with its request for discovery. On June 6, 1986, plaintiff was instructed by order of the court to complete outstanding discovery within 28 days and, when plaintiff failed to abide by the court's order, Siemans moved for dismissal pursuant to Supreme Court Rule 201(k). (134 Ill. 2d R. 201(k).) After a hearing on this motion, plaintiff was again ordered, on October 2, 1986, to comply with Siemans' demand for discovery within 28 days. It was only then, on October 9, 1986, that plaintiff finally answered the interrogatories submitted by Siemans. Based upon the fact that much of the delay prior to the filing of Siemans' section 2—621 motion in April 1987 was attributable to plaintiff, we find that Siemans did not fail to act

diligently in filing its section 2—621 motion and affidavit.

■■ Finally, we find that plaintiff has not demonstrated any actual prejudice stemming from the delay in filing or the fact that the incorrect identity of the manufacturer was given in Siemans' affidavit. Paragraph (b)(2) of section 2—621 (Ill. Rev. Stat. 1985, ch. 110, par. 2—621(b)(2)) provides that a dismissal granted to a certifying defendant *may* be vacated on the basis that the manufacturer's identity provided to plaintiff by the certifying defendant was incorrect. However, the paragraph also provides that the certifying defendant may again be granted dismissal once the correct identity of the manufacturer has been provided.

In this case plaintiff apparently discovered, through her own investigation, that the manufacturer was "W.C. Heraeus, Gmbh," rather than "W.C. Heraevs a/k/a Hanau Manufacturing Company." However, plaintiff never sought vacation of Siemans' dismissal from the cause of action on the basis that it had attempted to serve the manufacturer and was unable to do so because the incorrect identity was given.

■■ We believe that the statute should be construed liberally to provide a nonmanufacturing defendant, who is without personal fault, with a means to escape expensive litigation and obtain a dismissal at whatever point that the manufacturer becomes known to plaintiff. At that point the plaintiff has an obligation to diligently pursue the manufacturer. Just because a plaintiff was able to discover the identity of the manufacturer without the nonmanufacturing defendant's assistance does not foreclose that defendant's ability to obtain a dismissal under section 2—621. As noted earlier, one purpose of the statute is to provide a plaintiff, who is unaware of or unable to discover the identity of the manufacturer, with a means to obtain that information, in addition to the right to hold liable any member in the distributive chain until such information is provided and the manufacturer can be brought before the court.

For this reason we find that although plaintiff *could* have sought the vacation of the October 1987 dismissal on the grounds that the identity of the manufacturer was incorrectly given, this does not now invalidate the dismissal or make it error. Siemans would have been entitled to dismissal once the correct identity of the manufacturer was made known, and plaintiff can point to no prejudice stemming from the incorrect identity supplied in Siemans' affidavit. The manufacturer did, ultimately, contest service, but on the basis of a lack of personal jurisdiction, not because plaintiff named the wrong defendant, nor because of the delay between plaintiff's commencement of the

action against them and the time she obtained service of summons. For all these reasons, we find that the trial court's dismissal of Siemans from the cause of action on October 22, 1987, does not constitute error.

We next consider whether the trial court erred by refusing to vacate the October 22, 1987, dismissal and reinstate Siemans in the cause of action. Plaintiff contends that because the trial court found that the manufacturer was not subject to the jurisdiction of Illinois courts, the trial court was obligated to reinstate Siemans, pursuant to section 2—621(b)(3) of the Code. Ill. Rev. Stat. 1985, ch. 110, par. 2—621(b)(3).

Section 2—621(b)(3) states that an order of dismissal may be vacated and the certifying defendant reinstated *"if the plaintiff can show"* that "the manufacturer no longer exists, *cannot* be subject to the jurisdiction of the courts of this State, or, despite due diligence, the manufacturer is not amenable to service of process" (emphasis added). (Ill. Rev. Stat. 1985, ch. 110, par. 2—621(b)(3).) The onus is on the plaintiff to make this showing, which presumably may be rebutted by the certifying defendant.

In this case plaintiff demonstrated that the trial court had found the manufacturer to be outside the jurisdiction of the State's courts. However, the trial court apparently found that plaintiff had not shown that the manufacturer *could not* have been made subject to the jurisdiction of the court. As Siemans pointed out to the trial court, plaintiff did not argue in favor of finding jurisdiction at the hearing on the matter and, although a motion was filed seeking a vacation of the order releasing the manufacturer, plaintiff did not pursue that avenue, even though there appeared to be a likelihood of success if that motion had been heard. As stated before, it is clear from the record that plaintiff, throughout this case, has relied on the fact that it had the option to sue any member in the chain of distribution of an allegedly defective product. While we agree that, initially, this is true, the option is no longer available to the plaintiff once the manufacturer has been made a party to the litigation and there is no indication that the nonmanufacturing defendant was independently responsible for the defect.

The October 22, 1987, and May 17, 1989, orders of the circuit court of Cook County are affirmed.

Affirmed.

COCCIA and GORDON, JJ., concur.