# Illinois Official Reports

## Appellate Court

---

### *Cassidy v. China Vitamins, LLC*, 2017 IL App (1st) 160933

---

| | |
|---|---|
| Appellate Court Caption | MARTIN CASSIDY, Plaintiff-Appellant, v. CHINA VITAMINS, LLC, TAIHUA GROUP SHANGHAI TAIWEI TRADING COMPANY LIMITED, and ZHEIJIANG NHU COMPANY LTD., Defendants (China Vitamins, LLC, Defendant-Appellee). |
| District & No. | First District, Fifth Division<br>Docket No. 1-16-0933 |
| Filed | September 29, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-13276; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Horwitz, Horwitz & Associates, of Chicago (Thomas A. Kelliher and Michael D. Carter, of counsel), for appellant.<br><br>SmithAmundsen LLC, of Chicago (Michael Resis, of counsel), for appellee. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Justice Hall concurred in the judgment and opinion.<br>Justice Rochford specially concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1     Plaintiff Martin Cassidy filed this product liability action seeking damages for injuries he sustained when a flexible bulk container ripped and caused a stacked container to fall on him. The trial court dismissed the product liability action against defendant China Vitamins, LLC (China Vitamins), pursuant to the statutory provision that allows a nonmanufacturing defendant that identifies the product manufacturer to be dismissed from a strict liability in tort claim.

¶ 2     Eventually, the trial court entered a default judgment against defendant Taihua Group Shanghai Taiwei Trading Company Limited (Taihua Group), the manufacturer of the bulk container. In 2015, plaintiff moved the trial court to reinstate China Vitamins as a defendant, and the trial court ultimately denied that motion. The trial court also found there was no just reason to delay enforcement or appeal of that ruling.

¶ 3     On appeal, plaintiff contends that the law allows reinstatement of a nonmanufacturer defendant when an action against the manufacturer appears to be unavailing or fruitless. Plaintiff argues this exception applies in the instant case because the default judgment is not enforceable in the People's Republic of China (PRC), which will not recognize judgments entered in American state courts, and Chinese law does not follow Illinois damages law with respect to the elements of damages.

¶ 4     For the reasons that follow, we reverse the judgment of the trial court, which denied plaintiff's motion to reinstate defendant China Vitamins and improperly dismissed plaintiff's negligent product liability claim against China Vitamins. We remand this cause for further proceedings.

¶ 5                                    I. BACKGROUND

¶ 6     In 2007, plaintiff filed a three count complaint against China Vitamins, alleging it was liable under theories of strict product liability, negligent product liability, and *res ipsa loquitur*. Plaintiff alleged he sustained injuries at work on October 26, 2006, when a flexible bulk container ripped and leaked its contents, thereby becoming unstable among the other stacked containers and causing one of the stacked containers to fall on him and injure him.

¶ 7     In its April 2008 answer to the product liability counts, China Vitamins admitted that it distributed and sold a certain product stored inside the flexible bulk container but denied that it manufactured either the product or the container. China Vitamins also moved to dismiss the *res ipsa loquitur* count of the complaint for failure to state a cause of action because plaintiff did not allege that China Vitamins had exclusive control over the instrumentality that allegedly caused his injuries. Furthermore, China Vitamins filed a third-party negligence complaint against plaintiff's employer, seeking contribution as an alleged joint tortfeasor. The trial court granted China Vitamins' motion to dismiss and struck the *res ipsa loquitur* count of the complaint without prejudice pursuant to section 2-615(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(a) (West 2006)) and granted China Vitamins leave to file its third-party complaint. During discovery, China Vitamins identified Taihua Group as the manufacturer of the flexible bulk container.

¶ 8        Plaintiff was granted leave to file his October 2008 nine-count first amended complaint against defendants China Vitamins, Taihua Group, and Zheijiang Nhu Company Ltd. (Nhu) (the alleged manufacturer of the vitamins), alleging they were liable under theories of strict product liability, negligent product liability, and *res ipsa loquitur*. Plaintiff alleged that the bulk container was in an unreasonably dangerous condition when it left defendants' control; defendants' duty to exercise reasonable care for plaintiff's safety included a duty to exercise reasonable care in the design, manufacture, distribution, or sale of the bulk container; and the subject incident would not have occurred if defendants had used reasonable and proper care while the bulk container was under their control.

¶ 9        Defendant Nhu initially filed in August 2009 a special and limited appearance and motion challenging the court's personal jurisdiction. However, Nhu withdrew that motion in May 2010 and submitted to the jurisdiction of the court. In July 2010, the trial court entered an order of default against Nhu for failure to comply with orders regarding representation. The court struck Nhu's answer and deemed the allegations of the complaint admitted.

¶ 10       Meanwhile, defendant Taihua Group filed a general appearance in July 2009 and answer in August 2009, thereby waiving the service of process requirement and submitting itself to the court's jurisdiction. In its answer, Taihua Group admitted that it designed, manufactured, distributed, supplied and/or sold the flexible bulk container but denied any liability. On January 6, 2010, the trial court granted counsel for Taihua Group leave to withdraw as counsel and ordered Taihua Group to file a supplemental appearance by March 3, 2010. However, no supplemental appearance was filed.

¶ 11       Meanwhile, defendant China Vitamins' October 2008 answer denied any liability concerning the strict product liability and negligent product liability counts. China Vitamins moved the court to dismiss the *res ipsa loquitur* count pursuant to sections 2-615(a) and 2-619(a)(9) of the Code (735 ILCS 5/2-615(a), 2-619(a)(9) (West 2006)), arguing that plaintiff failed to state a cause of action and China Vitamins did not have exclusive control over the instrumentality that allegedly caused the injury. On November 20, 2008, the trial court granted the motion and dismissed and struck only the *res ipsa loquitur* count against China Vitamins.

¶ 12       In 2011, China Vitamins moved for summary judgment and requested dismissal of the strict product liability and negligent product liability counts, on grounds that it was only a distributor of bulk vitamins manufactured by Nhu; was not involved in the construction, design, or manufacture of the flexible bulk container at issue; never had possession or control of the flexible bulk container; had no actual knowledge of the defect; and did not create the defect. China Vitamins, which is headquartered in Bedminster, New Jersey, imported the vitamins into the United States for sale to customers. When an order for vitamins was placed, the vitamins were loaded into containers in China, shipped to the west coast of the United States, and then sent by rail direct to the customer. A container load usually consisted of "totes," which each weighed 1000 kilos or approximately one metric ton. China Vitamins argued it was entitled to dismissal of both the strict and negligent product liability counts pursuant to section 2-621 of the Code (735 ILCS 5/2-621 (West Supp. 1995), amended by

Pub. Act 89-7 (eff. Mar. 9, 1995)), as a nonmanufacturer defendant sued in a "product liability action based on any theory or doctrine."[1]

¶ 13    On January 9, 2012, the trial court denied China Vitamins' motion for summary judgment and instead dismissed both the strict and negligent product liability counts against China Vitamins without prejudice pursuant to section 2-621(b) of the Code. Also on January 9, 2012, the trial court granted plaintiff's motion for a default against Taihua Group based on its failure to retain counsel to file a supplemental appearance. After a prove-up hearing, the trial court entered on June 14, 2012, a default judgment against Taihua Group for $9,111,322.47. There was no adjudication of any cause of action against defendant Nhu.

¶ 14    Plaintiff issued citations to discover assets against Taihua Group but those citations were quashed on May 23, 2013 for lack of proper service against a foreign resident and foreign business entity. Between August 2013 and May 2015, plaintiff issued third-party citations to discover assets in pursuit of collection of the default judgment in Illinois, but those citations were dismissed because the third-parties were not holding assets that belonged to or were due and owing to Taihua Group.

¶ 15    On July 24, 2015, plaintiff moved to reinstate China Vitamins pursuant to section 2-621(b)(3) and (4) of the Code, arguing that Taihua Group was outside the personal jurisdiction of Illinois courts and not subject to or obligated to respond in a state court action under international law. The trial court initially granted the motion to reinstate China Vitamins but thereafter vacated that order when it granted China Vitamins' motion to reconsider. The trial court found that plaintiff failed to meet the conditions for reinstatement under section 2-621(b) of the Code and ruled that the order was final and appealable pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Thereafter, the trial court denied plaintiff's motion to reconsider and again made Rule 304(a) findings.

¶ 16                                  II. ANALYSIS

¶ 17    On appeal, plaintiff argues China Vitamins should be reinstated as a defendant based on section 2-621(b)(4) of the Code because Taihua Group, the manufacturer defendant, "is unable to satisfy any judgment as determined by the court." 735 ILCS 5/2-621(b)(4) (West 1994). Plaintiff asserts that Taihua Group has not paid the default judgment entered against it, an Illinois state court judgment is not enforceable in the PRC, and Taihua Group, which submitted to the jurisdiction of the Illinois state court, refuses to respond to this action, thus limiting plaintiff's ability to recover. Plaintiff asserts that he has met the legal requirements to establish that "it appears" an action against Taihua Group is "unavailable" or will be "fruitless" because sufficient evidence showed that the PRC does not recognize judgments entered in American state courts and Chinese law does not follow Illinois damages law with respect to the elements of damages. Plaintiff argues that the provision allowing a

---

[1]However, the "any theory or doctrine" language cited by China Vitamins was added to section 2-621 in 1995 by Public Act 89-7, which was held unconstitutional in its entirety and not severable by our supreme court in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). Accordingly, the version of section 2-621 that was in effect prior to the 1995 amendment is applicable to this case. *South Side Trust & Savings Bank of Peoria v. Mitsubishi Heavy Industries, Ltd.*, 401 Ill. App. 3d 424, 427 n.2 (2010). This issue is discussed *infra* ¶¶ 20-22.

nonmanufacturing defendant to be reinstated pursuant to section 2-621(b)(4) should include foreign manufacturers beyond the reach of Illinois courts.

¶ 18 Because a dismissal of a defendant under section 2-621 contemplates the possibility of further action, the dismissal does not dispose of the rights of the parties and thus is not final or appealable until the trial court rules on the plaintiff's motion to vacate the dismissal of his claims against the previously dismissed defendant and to reinstate those claims. *Kellerman v. Crowe*, 119 Ill. 2d 111, 115-16 (1987); *South Side Trust & Savings Bank of Peoria*, 401 Ill. App. 3d at 431. Here, the trial court denied plaintiff's motion to vacate the dismissal of his claims against China Vitamins and to reinstate those claims. The trial court also found that there was no just reason for delaying either enforcement or appeal of this judgment. Accordingly, this court has jurisdiction to review the trial court's January 2012 order, dismissing plaintiff's strict and negligent product liability claims against China Vitamins, and the 2015 orders denying plaintiff's motion to reinstate China Vitamins and motion for reconsideration.

¶ 19 The elements of a strict liability claim based on a product defect are (1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 543 (2008). Under Illinois law, all entities in the chain of distribution for an allegedly defective product are subject to strict liability in tort, and the imposition of liability on them is justified based on their position in the marketing process, which enables them to exert pressure on the manufacturer to enhance the safety of the product. *Hammond v. North American Asbestos Corp.*, 97 Ill. 2d 195, 206 (1983). However, Illinois law recognizes a "seller's exception" to product liability actions that are based on strict liability. This exception in section 2-621(b) of the Code provides that nonmanufacturer defendants may be dismissed from a strict product liability action under certain circumstances. 735 ILCS 5/2-621(b) (West 1994). The purpose of this exception is to allow defendants, whose sole basis of liability is their role as a member of the distributive chain of an allegedly defective product, to extract themselves from a strict product liability action at an early stage, before they incur the expense of fully litigating the dispute, and to defer liability upstream to the ultimate wrongdoer, the manufacturer. *Kellerman*, 119 Ill. 2d at 113; *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 775 (2008). The seller's exception, however, is subject to section 2-621(b)'s reinstatement mechanism, whereby a plaintiff may be allowed to reinstate a previously dismissed nonmanufacturer defendant if the plaintiff's action cannot reach the manufacturer or the manufacturer would not be able to satisfy a judgment or settlement. 735 ILCS 5/2-621(b) (West 1994); *Kellerman*, 119 Ill. 2d at 114. "Section 2-621 thus ensures that the burden of loss due to a defective or dangerous product remains on those who placed the product in the stream of commerce." *Thomas v. Unique Food Equipment, Inc.*, 182 Ill. App. 3d 278, 282 (1989).

¶ 20 Prior to 1995, this exception applied only to actions in strict product liability; if a plaintiff proceeded against a nonmanufacturer defendant under a negligence theory, that defendant was not entitled to dismissal under section 2-621. See *Link v. Venture Stores, Inc.*, 286 Ill. App. 3d 977, 978 (1997) (plaintiff had a vested right in her negligence cause of action against the defendant store for selling an alleged defectively designed car seat where the cause of action accrued and was filed before the statute was amended to provide for the dismissal of

such nonmanufacturer defendants). Specifically, the pre-1995 version of section 2-621 provided for dismissal of claims against nonmanufacturing defendants in "any product liability action based in whole or in part on the doctrine of strict liability in tort." 735 ILCS 5/2-621(a) (West 1994).

¶ 21    In 1995, the legislature enacted Public Act 89-7, the so-called Tort Reform Act, which, *inter alia*, amended section 2-621 to provide that nonmanufacturer defendants in product liability actions who were sued under "any theory or doctrine" could be dismissed if they fulfilled certain requisite criteria. 735 ILCS 5/2-621 (West Supp. 1995) (amended by Pub. Act 89-7 (eff. Mar. 9, 1995)). However, in 1997, our supreme court in *Best*, 179 Ill. 2d at 467, held that Public Act 89-7 was void in its entirety because certain core provisions of the act were contrary to the Illinois constitution and were not severable from the remaining provisions of the act. If an act is unconstitutional in its entirety, the state of the law is as if the act had never been enacted, and the law in force is the law as it was before the adoption of the unconstitutional amendment. *In re G.O.*, 191 Ill. 2d 37, 43 (2000); *People v. Gersch*, 135 Ill. 2d 384, 390 (1990). Our legislature has not reenacted the amendment to section 2-621 in the two decades since *Best* was decided. Accordingly, the pre-1995 version of section 2-621 is applicable to this case. *South Side Trust & Savings Bank of Peoria*, 401 Ill. App. 3d at 427 n.2.

¶ 22    The pre-1995 version of section 2-621 provides that a nonmanufacturer defendant, usually a distributor or retailer, in a strict product liability action may be dismissed from the action if it certifies the correct identity of the manufacturer of the product that allegedly caused the injury. 735 ILCS 5/2-621 (West 1994). As soon as the plaintiff has filed against the product manufacturer and the manufacturer has answered or otherwise pleaded, the court must dismiss the strict liability claim against the certifying defendant, unless the plaintiff shows the defendant (1) exercised some significant control over the design and manufacture of the product or instructed or warned the manufacturer relative to the alleged defect in the product, (2) had actual knowledge of the defect in the product, or (3) created the defect. 735 ILCS 5/2-621(b), (c) (West 1994); *South Side Trust & Savings Bank of Peoria*, 401 Ill. App. 3d at 431.

¶ 23    At any time subsequent to the dismissal, the plaintiff may move to vacate the order of dismissal and reinstate the certifying defendant, provided the plaintiff can show one or more of the following: (1) the applicable period of the statute of limitations or statute of repose bars the assertion of a strict liability in tort cause of action against the manufacturer; (2) the identity of the manufacturer given to the plaintiff by the certifying defendant was incorrect; (3) the manufacturer no longer exists, cannot be subject to the jurisdiction of the Illinois courts, or, despite due diligence, is not amenable to service of process; (4) "the manufacturer is unable to satisfy any judgment as determined by the court"; or (5) "the court determines that the manufacturer would be unable to satisfy a reasonable settlement or other agreement with the plaintiff." 735 ILCS 5/2-621(b)(1) to (b)(5) (West 1994).

¶ 24    On appeal, plaintiff argues that China Vitamins should be reinstated pursuant to section 2-621(b)(4) because he has sufficiently shown that the manufacturer Taihua Group "is unable to satisfy any judgment as determined by the court." 735 ILCS 5/2-621(b)(4) (West 1994). According to plaintiff, our supreme court in *Kellerman* adopted for section 2-621(b)(4) an "appears unavailing or fruitless standard" to assess whether the manufacturer is unable to satisfy any judgment. Plaintiff contends he has met this standard because his documented

unsuccessful efforts to enforce his over $9 million default judgment against Taihua Group establishes that he has no reasonable expectation that Taihua Group will ever remit the ordered damages and Taihua Group is insulated from his collection efforts because the Chinese government is unwilling to recognize or enforce American state court judgments against Chinese entities.

¶ 25    Plaintiff raises an issue of statutory interpretation, which this court reviews *de novo*. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). We disagree with plaintiff's assertion that *Kellerman*, 119 Ill. 2d at 116-17, construed section 2-621(b)(4) to require a plaintiff to show that it "appears" an action against the manufacturer would be "unavailing," "unavailable," or "fruitless." The *Kellerman* court did not construe the language of section 2-621. Rather, *Kellerman* addressed only whether a section 2-621 dismissal was a final and appealable order. The language in *Kellerman* quoted by plaintiff here was merely part of the *Kellerman* court's passing reference to, and summary of, all of the five subsections of section 2-621(b). See *Chraca v. U.S. Battery Manufacturing Co.*, 2014 IL App (1st) 132325, ¶ 22.

¶ 26    Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009). The plain language of a statute is the most reliable indication of legislative intent. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *Id.* The statute should be read as a whole and construed "so that no term is rendered superfluous or meaningless." *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). "Words and phrases should not be viewed in isolation but should be considered in light of other relevant provisions of the statute." *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 13. We do not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the legislative intent. *Harrisonville Telephone Co. v. Illinois Commerce Comm'n*, 212 Ill. 2d 237, 251 (2004). When the meaning of an "enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy." *Bettis*, 2014 IL 117050, ¶ 13.

¶ 27    This court previously addressed the meaning of section 2-621(b)(4) in *Chraca*, 2014 IL App (1st) 132325, where the consumer plaintiff, who had obtained a default judgment against a manufacturer-defendant located in China, moved to reinstate his product liability claim against the previously dismissed distributor defendant after the plaintiff was unable to collect on the default judgment. Specifically, the plaintiff argued that the Chinese manufacturer was "thumbing its nose at this Illinois court" by "ignoring this action." (Internal quotation marks omitted.) *Id.* ¶ 10. Plaintiff's counsel had engaged in collection proceedings and submitted affidavits averring that there was no reasonable expectation of ever collecting the default judgment against the Chinese manufacturer because, even though the manufacturer had been served in accordance with The Hague Convention, it was not possible to register a United States judgment in China, since there was no arrangement for the reciprocal enforcement of judgments between the United States and China. *Id.* Also, counsel averred that the plaintiff would have to start a new tort action in China and any amount of damages that might be awarded would be significantly less than that in the United States. *Id.*

¶ 28      This court in *Chraca* concluded that the plaintiff had not met his burden under section 2-621(b)(4) to show that the manufacturer defendant was unable to satisfy any judgment because "[a]uthority indicates that in a section 2-621 proceeding, a company is deemed 'unable to satisfy any judgment' when it is bankrupt or nonexistent." *Id.* ¶ 24. Specifically, *Chraca* found that the plaintiff failed to present any information about the financial viability of the manufacturer, which seemed to be an ongoing business because the plaintiff's Chinese translator purported to have reached the manufacturer's owner on a mobile telephone. *Id.* ¶ 25.

¶ 29      We find that the *Chraca* court's analysis was flawed and its conclusion is not persuasive. The three cases *Chraca* cited to support its conclusion were not limited to the issue of a manufacturer's bankruptcy or nonexistence. Rather, the rationale of the cited cases focused on whether the manufacturer was judgment-proof and ensuring that the plaintiff's total recovery would not be prejudiced by the dismissal of a nonmanufacturer defendant. See *Harleysville Lake States Insurance Co. v. Hilton Trading Corp.*, No. 12 C 8135, 2013 WL 3864244, at *3 (N.D. Ill. July 23, 2013) (because there was no suggestion that the manufacturer was either insolvent under section 2-621(b)(3) or otherwise judgment-proof under section 2-621(b)(4), the retailer was entitled to be dismissed under the seller's exception); *Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254, 1271 (D. Minn. 2009) (the retailer of the defective product was not entitled to dismissal under the seller's exception statute because the manufacturer had filed for Chapter 7 bankruptcy and the retailer failed to support its claim that the manufacturer's liability insurance policy would satisfy a judgment against the manufacturer); *Malone v. Schapun, Inc.*, 965 S.W.2d 177, 182 (Mo. Ct. App. 1997) (after the plaintiffs had settled with the manufacturer and distributor for a *partial* payment of the plaintiffs' claims, the mere seller was not entitled to dismissal because the statute required that there had to be another defendant properly before the court from whom *total* recovery may be had).

¶ 30      *Chraca* misconstrued the import of the holdings of *Harleysville*, *Finke*, and *Malone* to support *Chraca*'s finding that "unable to satisfy any judgment" must mean bankrupt or nonexistent. To the contrary, *Harleysville*, *Finke*, and *Malone* actually considered the effect a manufacturer's judgment-proof status would have on the plaintiff's total recovery. Nothing in section 2-621(b)(4) limits its application to only bankrupt or nonexistent manufacturers. Moreover, assigning *Chraca*'s narrow meaning of bankrupt and nonexistent to section 2-621(b)(4) renders some of the language of section 2-621(b)(3), *i.e.*, "no longer exists," superfluous. 735 ILCS 5/2-621(b)(3) (West 1994). Accordingly, we do not follow *Chraca*'s analysis or holding concerning section 2-621(b)(4).

¶ 31      When determining the plain and ordinary meaning of words, a court may look to the dictionary if, as here, a word or phrase is undefined in the statute. *Murphy*, 381 Ill. App. 3d at 774. The adjective "able" is defined as "having sufficient power, skill, or resources to accomplish an object," and "susceptible to action or treatment." Merriam-Webster's Collegiate Dictionary 3 (10th ed. 1998). "Unable" is defined as "not able," "incapable," such as (a) "unqualified, incompetent," (b) "impotent, helpless." https://www.merriam-webster.com. (last visited Aug. 17, 2017).

¶ 32      "Satisfy" is defined as "1 a : to carry out the terms of (as a contract) : DISCHARGE b : to meet a financial obligation to 2 : to make reparation to (an injured party) : INDEMNIFY 3 a : to make happy : PLEASE b : to gratify to the full : APPEASE." Merriam-Webster's

Collegiate Dictionary 1038 (10th ed. 1998). The noun "satisfaction" is defined as the "fulfillment of an obligation; esp., the payment in full of a debt." Black's Law Dictionary 1343 (7th ed. 1999). The phrase "satisfaction of judgment" means "1. The complete discharge of obligations under a judgment. 2. The document filed and entered on the record indicating that a judgment has been paid." *Id.*

¶ 33    Also, we note that the phrase "unable to satisfy a judgment" is synonymous with the terms "judgment-proof" and "execution-proof." See *id.* at 849 (defining "judgment-proof" as "unable to satisfy a judgment for money damages because the person has no property, does not own enough property within the court's jurisdiction to satisfy the judgment, or claims the benefit of statutorily exempt property.—Also termed *execution-proof.*"). Terms of art abound in the law, and the entire phrase "unable to satisfy any judgment" is a term of art that means judgment-proof, execution-proof. Rather than construing that entire phrase, it seems that *Chraca*'s analysis focused on the word "unable." Similarly, here, the trial court and defendant China Vitamins focused on the word "unable" to conclude that reinstatement of China Vitamins was not warranted because Taihua Group seemed unwilling rather than unable to pay the judgment.

¶ 34    Nothing in section 2-621(b)(4) suggests that we should not give the phrase "unable to satisfy any judgment" its ordinary meaning of judgment-proof. See also *Ungaro v. Rosalco, Inc.*, 948 F. Supp. 783, 785 (N.D. Ill. 1996) (refusing to apply the section 2-621(b)(4) or (5) "exception pertaining to judgment-proof manufacturers" because the plaintiff failed to show that the manufacturer "is unable to satisfy any judgment imposed by this court")[2] Thus, in order to reinstate a previously dismissed nonmanufacturer defendant, the plaintiff, in addition to showing that the manufacturer is insolvent or bankrupt, may also show that the manufacturer has no property or does not own enough property within the court's jurisdiction to satisfy the judgment. We do not hold that section 2-621(b)(4) applies when a plaintiff merely has trouble collecting a judgment; there can be a significant difference between situations involving a plaintiff experiencing some difficulty in collecting a judgment and a defendant being judgment-proof. The court's focus is not on plaintiff's mere inability to collect or enforce the judgment but, rather, whether plaintiff, based on the plain language of the statute, has met his burden to show that Taihua Group is judgment-proof.

¶ 35    Even if section 2-621(b)(4) was deemed ambiguous, our construction of the statute is consistent with its purpose to ensure that the burden of loss due to defective or dangerous products is not borne by the consumer but instead remains on the manufacturer, distributor, and retail defendants who placed the product in the stream of commerce. See *Hammond*, 97 Ill. 2d at 206; *Thomas*, 182 Ill. App. 3d at 282. We find no support in the Illinois common law or statutes concerning strict product liability for the notion that the legislature intended for injured consumers to bear unreasonable costs to chase after foreign manufacturers who do not own sufficient property within the court's jurisdiction to satisfy a judgment while reachable downstream liability distributor defendants—who profited from the sale of the defective product, could have contracted with the manufacturer for insurance coverage, and could seek indemnification from the manufacturer—simply sit and watch from the sidelines.

---

[2]*Ungaro* was issued one year before *Best*, 179 Ill. 2d 367, and thus *Ungaro*'s holding that the seller's exception of section 2-621 applies to negligence product liability claims has been superseded. See *supra* ¶¶ 12 n.1, 20-22.

¶ 36    According to the plainly-worded statute, plaintiff has the burden to show that Taihua Group is unable to satisfy the over $9 million default judgment because Taihua Group either lacks the power, skill, or resources to do so; has no property; or does not own enough property within the court's jurisdiction to satisfy the judgment. A plaintiff must put on competent evidence to show under section 2-621 that the previously dismissed nonmanufacturer defendant should be reinstated in the case. See *Logan v. West Coast Cycle Supply Co.*, 197 Ill. App. 3d 185, 191 (1990). Where, as here, a trial court rules on the plaintiff's motion to reinstate the nonmanufacturer defendant without hearing any testimony and based solely on documentary evidence, a *de novo* standard of review is appropriate. *Rosenthal-Collins Group, L.P. v. Reiff*, 321 Ill. App. 3d 683, 687 (2001).

¶ 37    Because section 2-621(b)(4) includes judgment-proof manufacturers, the issues about whether Taihua Group is a viable enterprise in China and that country's alleged policy to disregard judgments rendered in American state courts are not dispositive of the issue of China Vitamin's reinstatement. According to the record, Taihua Group submitted to the jurisdiction of the trial court but then dropped out of the proceedings and has not paid the judgment rendered against it. The record also contains evidence of plaintiff's efforts to discover assets to satisfy any portion of the default judgment against Taihua Group. Specifically, the record before the trial court documented plaintiff's retention of Querrey & Harrow, Ltd. after the entry of the default judgment to identify assets to collect the default judgment against Taihua Group, the entry of citations to discover assets against Taihua Group and multiple third parties, the various motions to quash presented by the third parties, and a conditional judgment entered against a third party that was subsequently vacated by the trial court. See *May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153, 159 (1976) (a court may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned). Furthermore, plaintiff summarized in his motion to reinstate China Vitamins the history of his unsuccessful attempts to collect the default judgment.

¶ 38    Nothing in the plain language of section 2-621(b)(4) requires a plaintiff to exhaust all possible means of collection of a judgment before a previously dismissed nonmanufacturer defendant may be reinstated. Rather, the plain language of the statute provides for reinstatement if "the manufacturer is unable to satisfy any judgment *as determined by the court*." (Emphasis added.) 735 ILCS 5/2-621(b)(4) (West 1994). Civil judgments are not self-executing, and tort claimants often must undertake postjudgment litigation to collect their judgments. We believe the determination of whether a plaintiff has expended sufficient effort to show that a manufacturer is judgment-proof may be best addressed first by the circuit court, which often will have direct knowledge of the plaintiff's efforts. Here, the parties and the trial court analyzed the section 2-621(b)(4) reinstatement issue within the confines of *Chraca*'s holding that a plaintiff must show that the manufacturer defendant was either bankrupt or nonexistent. Because we reject that holding by *Chraca*, and because the trial court denied plaintiff's motion to reinstate China Vitamins based on the lack of any evidence that Taihua Group was bankrupt or no longer existed, we reverse the trial court's denial of plaintiff's motion and remand the cause to the trial court for further proceedings consistent with this opinion.

¶ 39    Finally, we also reverse the trial court's order that dismissed plaintiff's negligent product liability claim against China Vitamins. As discussed above, the version of section 2-621 that

is presently in effect permits a seller's exception dismissal only for a claim of strict product liability. Negligent product liability claims are not strict liability claims and therefore are not subject to dismissal under section 2-621. *Link*, 286 Ill. App. 3d at 978.

¶ 40                                    III. CONCLUSION

¶ 41    For the foregoing reasons, we conclude that the trial court erroneously denied plaintiff's motion to reinstate the action against China Vitamins based on the lack of any evidence showing that Taihua Group was bankrupt or no longer existed. We remand this cause to the trial court for further proceedin*gs* to determine whether Taihua Group is unable to satisfy any judgment within the meaning of section 2-621(b)(4). Also, we conclude that the trial court erroneously dismissed plaintiff's negligent product liability claim against China Vitamins under a void version of the statute. Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings.

¶ 42    Reversed and remanded.

¶ 43    JUSTICE ROCHFORD, concurring in part and dissenting in part:

¶ 44    I concur in the majority's decision to vacate the dismissal of plaintiff's negligence-based product liability claim against China Vitamins, for the reasons discussed *supra* ¶¶ 21-39. I also concur with the majority's conclusion that the decision in *Kellerman v. Crowe*, 119 Ill. 2d 111, 115-16 (1987), does not provide the relevant standard applicable to this matter, for the reasons discussed *supra* ¶¶ 24-25. However, for the reasons that follow, I respectfully dissent from the majority's decision to remand this matter for further proceedings on plaintiff's motion to reinstate China Vitamins as a defendant with respect to plaintiff's strict product liability claim.

¶ 45    On appeal, plaintiff argues that his strict product liability action against China Vitamins should be reinstated pursuant to section 2-621(b)(4) of the Code of Civil Procedure, which allows for such reinstatement where "the manufacturer is unable to satisfy any judgment as determined by the court." 735 ILCS 5/2-621(b)(4) (West 2014). A plaintiff bears the burden of establishing that a statutory basis exists for the reinstatement of a dismissed defendant. *Cherry v. Siemans Medical Systems, Inc.*, 206 Ill. App. 3d 1055, 1064 (1990).

¶ 46    In seeking reinstatement under section 2-621(b)(4), plaintiff specifically argued that he "made exhaustive attempts to collect the [default] judgment [against Taihua Group]," that he has been unable to do so, and that such efforts "will continue to be unavailing." Thus, plaintiff sought reinstatement under this section primarily on the basis of his difficulty in enforcing the judgment.

¶ 47    In finding that this matter should be remanded to allow plaintiff to satisfy his burden of establishing that a statutory basis exists for the reinstatement of China Vitamins, the majority first interprets section 2-621(b)(4) to allow for reinstatement where a manufacturer is "judgment-proof." *Supra* ¶ 34. However, the majority provides three different, partially overlapping definitions of what that means. See *supra* ¶ 33 (noting that judgment-proof is defined as "unable to satisfy a judgment for money damages because the person has no property, does not own enough property within the court's jurisdiction to satisfy the judgment, or claims the benefit of statutorily exempt property"); *supra* ¶ 34 (to establish that

a manufacturer is judgment-proof, "the plaintiff, in addition to showing that the manufacturer is insolvent or bankrupt, may also show that the manufacturer has no property or does not own enough property within the court's jurisdiction to satisfy the judgment"); *supra* ¶ 36 (finding that a plaintiff has the burden to show that manufacturer "lacks the power, skill, or resources to [satisfy a judgment against it], has no property; or does not own enough property within the court's jurisdiction to satisfy the judgment"). Then, stating that its "focus is not on plaintiff's mere inability to collect or enforce the judgment," the majority nevertheless suggests that—on remand—plaintiff may establish that Taihua Group was "judgment-proof" by presenting competent evidence concerning his unsuccessful efforts to collect any portion of the default judgment against Taihua Group. *Supra* ¶¶ 34-37.

¶ 48    However, in light of the plain statutory language, it is my belief that it is improper to focus on *plaintiff's inability to enforce* the default judgment rather than *Taihua Group's inability to satisfy* that judgment.

¶ 49    As the majority correctly notes, plaintiff's arguments require this court to interpret the language of section 2-614(b)(4) *de novo*, to give effect to the legislative intent evidenced by the plain language of that section and, in doing so, not depart from the plain language by reading into it exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent. *Supra* ¶¶ 25-26. The plain language of section 2-621(b)(4) provides that the dismissal of a nonmanufacturing defendant may be vacated, and the strict liability action against it reinstated only where the court determines "the manufacturer is unable to satisfy the judgment." 735 ILCS 5/2-621(b)(4) (West 2014). "When a court is called upon to determine whether a statutory term has a plain and ordinary meaning, it is appropriate to consult a dictionary." *Board of Education of Springfield School District No. 186 v. Attorney General of Illinois*, 2017 IL 120343, ¶ 41. As the definitions provided by the majority itself indicate (*supra* ¶¶ 31-32), dictionary definitions of the words contained in the phrase "the manufacturer is unable to satisfy the judgment" indicate that it has the following plain and ordinary meaning: the manufacturer is not able or is incapable of completely discharging its financial obligations under the judgment.

¶ 50    What is also evident from that plain language is that the proper focus should be on the manufacturer's *inability* to *satisfy* a judgment. There is no language in section 2-621(b)(4) stating that a dismissal may be vacated where the court determines a plaintiff cannot *enforce* a judgment, and no language that reinstatement may occur merely when the court determines that the manufacturer has insufficient or no assets within the court's specific jurisdiction—while possessing assets elsewhere. As such, there is nothing in the plain language of the statute to support the contention that plaintiff's difficulties in *enforcing* the default judgment in China or elsewhere rendered Taihua Group *unable to satisfy* that judgment. And, without reading conditions into the statutory text, there is no language indicating that section 2-621(b)(4) is concerned with manufacturers that are "judgment-proof," as defined in three separate ways by the majority.

¶ 51    This court's decision in *Chraca v. U.S. Battery Manufacturing Co.*, 2014 IL App (1st) 132325, supports this reading of section 2-621(b)(4).

¶ 52    In *Chraca*, the plaintiff was injured while unpacking a shipment of golf cart batteries sent by the defendant U.S. Battery Manufacturing Company (U.S. Battery) to the plaintiff's employer. *Id.* ¶ 2. The plaintiff suffered injuries as he was carrying individual batteries with a strap that broke. *Id.* The plaintiff brought a strict liability action against the manufacturer of

the strap and U.S. Battery. *Id.* U.S. Battery was dismissed as a defendant under section 2-621(b) after showing it did not participate in the manufacture and design of the strap and had no knowledge of, nor responsibility for, any defect in the strap. *Id.* ¶ 8. U.S. Battery identified the manufacturer, Yuhuan County Litian Metal Products Co. Ltd., an entity located in China. *Id.* The plaintiff filed an amended complaint, which added the manufacturer as a defendant and served the manufacturer pursuant to the Hague Convention. *Id.* ¶ 9. The plaintiff obtained a default judgment against the manufacturer-defendant. *Id.* ¶ 1. Subsequently, the plaintiff moved to reinstate his product liability claim against U.S. Battery, arguing that it was unable to collect the default judgment. *Id.* ¶ 12. In support of the motion, the plaintiff submitted affidavits from lawyers in China averring that there was no reasonable expectation of ever collecting the default judgment in that a United States judgment could not be registered and the plaintiff would have to bring a new tort action in China where the potential award of damages would be significantly less than that in the United States. *Id.* ¶ 13.

¶ 53    In construing section 2-621(b)(4) in *Chraca*, this court noted that "[a]uthority indicates that in a section 2-621 proceeding, a company is deemed 'unable to satisfy any judgment' when it is bankrupt or nonexistent." *Id.* ¶ 24 (collecting cases). We then concluded that plaintiff's inability to enforce a judgment was not a basis for reinstatement, stating:

> "Chraca's attorney misconstrued the statutory language when he asked [another attorney] how Chraca could demonstrate to the Illinois trial court that there is 'no reasonable expectation of ever collecting a judgment against the Chinese [manufacturing] company.' [The] response and the joint affidavit of the two Chinese attorneys about their local court's unwillingness to 'recognize or enforce a judgment obtained in an American state court' do not indicate that Yuhuan was declared bankrupt or is no longer operating and thus is 'unable to satisfy any judgment' as that phrase is used in the statute at issue." *Id.* ¶ 25 (citing 735 ILCS 5/2-621(b)(4) (West 2010)).

¶ 54    Thus, in interpreting the phrase "unable to satisfy any judgment," the *Chraca* court properly distinguished between a defendant manufacturer's inability to satisfy a judgment and a plaintiff's inability to enforce a judgement. I see no reason to depart from the *Chraca* court's interpretation, as it reflects the plain language of the statute.

¶ 55    Nevertheless, both plaintiff and the majority take issue with *Chraca's* limitation of the application of section 2-621(b)(4) to only those situations where a manufacturing defendant is bankrupt or nonexistent, in part because the authority cited by the *Chraca* court did not focus simply on insolvency or nonexistence, but rather on the fact that defendant manufacturers were "judgment-proof." *Supra* ¶¶ 29-30. While those two situations may not represent the only circumstances where a manufacturer is unable to satisfy a judgment, I find that—at the very least—our prior decision correctly interpreted the plain statutory language to focus on the defendant's inability to satisfy a judgment rather than a plaintiff's inability to enforce a judgement.

¶ 56    Moreover, while the majority contends that the phrase "unable to satisfy any judgment" contained in section 2-621(b)(4) represents a legal "term of art" meaning "judgment-proof," I note that our supreme court has only recognized that "if a term has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate the established meaning." *People v. Smith*, 236 Ill. 2d 162, 167 (2010). However, the majority cannot say the

terms of that statute have the settled legal meaning of "judgment-proof" after it both rejects the interpretation of section 2-621(b)(4) previously offered by the *Chraca* court and after its own analysis provides three separate definitions of the language of the statute, which the majority arrived at by combining and extrapolating from several dictionary definitions.

¶ 57    That said, there may be valid policy reasons for allowing the reinstatement of a dismissed defendant in the chain of distribution when a plaintiff has failed to overcome significant burdens in the collection of a judgment. However, this court is not free to read exceptions, limitations, or conditions into a statute, even for laudable reasons. *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 13. Indeed, this court has previously declined to place glosses upon or provide exceptions to the plain language of section 2-621(b). See *Logan v. West Coast Cycle Supply Co.*, 197 Ill. App. 3d 185, 193 (1990); *Cherry*, 206 Ill. App. 3d at 1064. In contrast, here the majority improperly grafts its own definition of "judgement-proof" onto the plain language of section 2-621(b)(4).

¶ 58    Moreover, if the legislature had in fact desired to include a plaintiff's inability to enforce a judgment as a statutory basis for reinstatement, it could easily have done so. The provisions of section 2-621 are one example of legislation enacted in many states "that, to some extent, immunizes nonmanufacturing sellers or distributors from strict liability." Restatement (Third) of Torts: Products Liability § 1 cmt. e (1998). These statutes "are loosely patterned after the Model Uniform Product Liability Act" (Model Act). *Malone v. Schapun, Inc.*, 965 S.W.2d 177, 181 (Mo. Ct. App. 1997) (citing Frank J. Cavico, Jr., *The Strict Tort Liability of Retailers, Wholesalers, and Distributors of Defective Products*, 12 Nova. L. Rev. 213, 240-41 (1987)).

¶ 59    Notably, the Model Act includes provisions that a product seller will be held liable to the same extent as a manufacturer in a strict product liability action *both* where (1) the manufacturer is insolvent such that it is "unable to pay its debts and (2) "[t]he court determines that it is highly probable that a claimant would be unable to enforce a judgment." 44 Fed. Reg. 62714, at 62726 (1979). Our legislature chose not to include an "unable to enforce" provision in section 2-621(b)(4), thus exhibiting an intent that the inability to enforce a judgment was not a consideration in the mechanisms of section 2-621(b)(4). Legislatures in other states have similarly expressed their legislative intent, electing to provide a "seller's exception" under different circumstances than those included in the Model Act. See Wash. Rev. Code Ann. § 7.72.040(2)(b) (incorporating the Model Act's "highly probable" language); Minn. Stat. Ann. § 544.41(2)(4) (utilizing language identical to section 2-621(b)(4)).[3]

¶ 60    Further, and contrary to the majority's interpretation, section 2-621(b)(4) does not specifically include language providing for reinstatement where a manufacturer has either no assets or insufficient assets within the court's jurisdiction to satisfy a judgment. Perhaps this is because Illinois is one of many states that recognize foreign judgments and provide a mechanism for enforcement of such foreign judgments. See 735 ILCS 5/12-650 *et seq.* (West 2014) (Uniform Enforcement of Foreign Judgments Act); 735 ILCS 5/12-661 *et seq.* (West

---

[3]Notably, the Minnesota language—identical to our own—appears to have been applied only where the manufacturer is insolvent. See *Tabish v. Target Corp.*, Civ. No. 07-2303 RHK/JSM, 2007 WL 1862095, at *2 (D. Minn. June 26, 2007); *Marcon v. Kmart Corp.*, 573 N.W.2d 728, 731 (Minn. Ct. App. 1998).

2014) (Uniform Foreign-Country Money Judgments Recognition Act). As such a defendant is generally not considered judgment-proof simply because assets are located outside the jurisdiction of the court. I therefore have concerns about making an overbroad generalization that a defendant is unable to satisfy a judgment simply because it has either no assets or insufficient assets within the court's specific jurisdiction.

¶ 61　　Furthermore, I note that in response to the plaintiff's effort to reinstate, China Vitamins provided evidence that Taihua Group was an ongoing commercial concern operating thorough various subsidiaries in China and many other countries. This included sales and warehouse facilities in Germany. Of note, and despite any difficulties plaintiff may have collecting its judgment in China, German law contains specific provisions for the enforcement of foreign judgments. See Zivilprozessordnung (ZPO) (German Code of Civil Procedure) §§ 328, 722, 723, *translation at* https://www.gesetze-im-internet.de/englisch_zpo/index.html (Ger.). While the majority contends that plaintiff should not be forced to "chase after foreign manufacturers" before reinstating a nonmanufacturer defendant (*supra* ¶ 35), the process of enforcing judgments in other jurisdictions is not outside the norm. Rather, as the above discussed mechanisms reflect, it is a normal part the litigation process. Indeed, even the majority itself recognizes: "Civil judgments are not self-executing, and tort claimants often must undertake postjudgment litigation to collect their judgments." *Supra* ¶ 38.

¶ 62　　Finally, I note that even if the statutory definition and policy considerations proffered by the majority are to be accepted, it would not necessarily follow that the dismissal of plaintiff's strict product liability claim against China Vitamins should be vacated. To the extent that we look to Taihua Group's power, skill, and resources to pay the default judgement, I note that plaintiff himself acknowledges on appeal that Taihua Group "could voluntarily pay the damages assessed against it." And, to the extent that the majority seeks to ensure that section 2-621 succeeds in its objective to place the burden of loss on those who placed the product in the stream of commerce (*supra* ¶ 19), plaintiff has taken no efforts to finalize the default entered against defendant Nhu, another defendant involved in the supply chain at issue here, or to attempt to collect damages from that remaining defendant.

¶ 63　　For all the above the reasons, I respectfully dissent from the majority's decision to remand for further proceedings on plaintiff's motion to reinstate China Vitamins as a defendant with respect to the strict product liability claim. Plaintiff's motion failed to demonstrate that Taihua Group was unable to satisfy the judgment against it, when that phrase is given its plain and ordinary meaning. That said, nothing in the statute would prevent plaintiff from bringing another, similar motion below should it have additional, relevant evidence regarding Taihua Group's inability to satisfy the judgment. See 735 ILCS 5/2-621(b) (West 2014) ("The plaintiff may *at any time* subsequent to the dismissal move to vacate the order of dismissal and reinstate the certifying defendant or defendants." (Emphasis added.)).